**Robert W. WILDBERGER Jr., Appellant,**

v.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO and John N. Sturdivant, Appellees.**

No. 95–7150.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1996.

Decided June 21, 1996.

Rehearing Denied Aug. 6, 1996.

Paul A. Levy, Washington, DC, argued the cause for appellant, with whom Alan B. Morrison was on the briefs.

Michael J. Schrier, Washington, DC, argued the cause for appellees. Charles A. Hobbie and Mark D. Roth were on the brief.

Before: EDWARDS, Chief Judge, WALD and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

The former president of a local union representing government employees argues that his removal from office by the parent union violated his right to a "full and fair hearing" as guaranteed by the Labor–Management Reporting and Disclosure Act. We agree. Because the local's president was a vocal critic of the president of the parent union, the latter's use of a disciplinary procedure in which he initiated the investigation, determined probable cause, and served as the final adjudicator posed a sufficiently high risk of bias to violate the requirements of the LMRDA.

I.

Plaintiff-appellant Robert Wildberger Jr. was employed as a program analyst by the United States Small Business Administration. He was also president of Local 2532, which represents employees at the SBA headquarters in Washington, D.C., as well as of Council 228 of the American Federation of Government Employees, comprised of local AFGE chapters representing SBA employees throughout the country. Defendant-ap-

pellees are the AFGE and its president John N. Sturdivant.

In June 1989, Sturdivant's office began investigating Wildberger's actions as president of Local 2532. This investigation culminated in the disciplinary proceedings that are the focus of this case. Although the parties disagree on the extent of Sturdivant's role, both sides agree that he initiated the investigation. Shortly thereafter, concerned about Wildberger's management of Local 2532's finances, the national AFGE placed a hold on all checks due the local from the AFGE and audited the local's financial records. Acting on Sturdivant's recommendation, the AFGE's national executive council placed Local 2532 in trusteeship. In doing so, it acted pursuant to a provision of the union's constitution allowing the national office to take control of a local that "cannot function autonomously."

Two years later, in a letter dated June 3, 1991, Sturdivant charged Wildberger with four violations of AFGE's constitution: (1) misrepresenting his authority to the SBA and the Federal Mediation and Conciliation Service and attempting to usurp the authority of another SBA local AFGE chapter; (2) using Local 2532 funds to rent an apartment for a woman who was not a member of the AFGE; (3) charging in a letter to the Administrator of the SBA that two members of Local 2532 were engaged in criminal conduct and trying to intimidate one of them into withdrawing from a bargaining committee by threatening to revive a dormant investigation against her; and (4) improperly transferring funds from Council 228 to Local 2532. In the same letter, Sturdivant announced that, pursuant to his powers under Article IX, Section 5(e) and Article XVIII, Section 1 of the union constitution, he would appoint a three-member trial committee to hear the charges, and that the trial would begin on June 18, 1991. The letter explained that the trial committee would submit its findings and recommendations to Sturdivant who would make the final decision.

Shortly thereafter, before Sturdivant appointed his trial committee, a committee consisting of members of Wildberger's Local 2532 scheduled its own trial and, according to Wildberger, notified Sturdivant in writing of

the hearing's time and place. The parties disagree about Wildberger's role in establishing the local committee: Wildberger claims that his local's membership elected the trial committee; Sturdivant claims that Wildberger selected its members. Following a one-day hearing, the local trial committee issued a report dated June 17, adopting findings and conclusions prepared by Wildberger and dismissing all charges against him. In a letter to local trial committee chair Sandra Mont, Sturdivant asserted that the local committee failed to give him notice of the local trial, that the charging party was not present, and that therefore the June 17 trial report was "not valid and [was] rejected." Sturdivant also suggested that the AFGE might take disciplinary action against Mont. In response, Mont sent Sturdivant an "affidavit," stating that Wildberger had prepared the trial report himself and withdrawing her signature from the report.

On June 27, Sturdivant appointed the trial committee referred to in his June 3 letter. The committee was composed of three members of other AFGE locals. One day after the trial began, the committee suspended proceedings due to a member's family emergency. By then, the AFGE's general counsel and the AFGE's vice-president had presented their evidence. Wildberger had not put on any defense; he had refused to cross-examine witnesses testifying against him or call any witnesses in his defense, contending that, in light of his acquittal by the local trial committee, Sturdivant's committee had no jurisdiction and that the national union had improperly denied him exculpatory documents in its possession. Wildberger said that he would present his closing argument and exhibits when the committee reconvened. Before the committee could reconvene, Wildberger wrote several letters to committee members accusing them of bias against him and demanding that they recuse themselves. In three letters to trial committee chair Stan Gordon, Wildberger threatened to sue Gordon and Gordon's employer, the American Red Cross, for libel and defamation if Gordon did not recuse himself. For these repeated threats to sue the Red Cross, Sturdivant suspended Wildberger as president of Local 2532.

Wildberger responded by filing suit in the United States District Court for the District of Columbia, seeking a temporary restraining order and a preliminary injunction to prevent his removal from office and any further disciplinary proceedings. In his *pro se* complaint, Wildberger claimed that the national union had subjected him to double jeopardy, that Sturdivant's trial committee was biased against him, and that the union had failed to follow its own procedures, including denying him proper discovery. Relying in part on union counsel's assurance that the union would not hold an election to replace Wildberger as president until the resolution of his suit, the district court refused to issue a temporary restraining order and directed Wildberger to exhaust his union remedies.

Shortly thereafter, on September 30, the trial committee reconvened. Claiming that during the July proceedings Wildberger had waived his right to present testimony, the trial committee prohibited him from presenting witnesses and from cross-examining prosecution witnesses. But the committee did allow Wildberger to submit an affidavit and to make a closing argument. On October 29, the trial committee issued a report recommending that Sturdivant dismiss two of the four charges but that he uphold the charge involving the rented apartment and a portion of the charge involving Wildberger's intimidation of a member of his local. The trial committee recommended that the AFGE remove Wildberger from office, bar him from holding elected or appointed office in the AFGE for ten years, and suspend him from union membership also for ten years. Sturdivant adopted the committee's recommendations, adding a requirement that, in order to regain union membership, Wildberger repay the funds wrongfully expended. Wildberger appealed to the National Executive Council of the AFGE, which upheld Sturdivant's decision. He then appealed to the AFGE 1994 National Convention. The Convention adjourned without reaching his appeal.

Represented by counsel, Wildberger renewed his motion for a preliminary injunction to enjoin the union's disciplinary proceedings as violative of the LMRDA and the

union constitution and to stay his suspension as president. He alleged several violations of the Act including: that the union had subjected him to "double jeopardy" by requiring him to face two successive hearings for the same charges; that the trial committee was not impartial because Sturdivant had rigged it by appointing his political supporters; that the union had improperly denied him access to documents necessary for his defense; that the union had refused to allow him to call witnesses at the hearing and cross-examine Sturdivant; and that the union had not allowed him to respond to the recommendations of the trial committee. After the district court denied Wildberger's motion for a preliminary injunction and Sturdivant's motion to dismiss for lack of jurisdiction, the parties filed cross-motions for summary judgment. Finding that the procedures Sturdivant employed were fully authorized by the union constitution and that Wildberger had failed to provide any evidence of actual bias by Sturdivant or the trial committee, the district court denied Wildberger's motion for summary judgment and granted summary judgment to the union and Sturdivant. Wildberger appeals.

## II.

■ Before reaching the merits of this case, we consider whether we have subject-matter jurisdiction to hear Wildberger's challenges. Our jurisdiction turns on whether the LMRDA applies to the AFGE. The LMRDA covers a "labor organization engaged in an industry affecting commerce and includes any organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers." 29 U.S.C. § 402(i) (1994). The LMRDA definition of "employer," specifically excludes federal, state and local governments. 29 U.S.C. § 402(e). The AFGE is a "mixed" union, that is, it represents both government and private sector workers. According to the Department of Labor's regulation interpreting the LMRDA, in the case of "organization[s] composed both of government locals and non-government or mixed locals, the parent organization as well as its mixed and non-government locals would be

... subject to the Act." 29 C.F.R. § 451.3(a)(4) (1995).

Addressing the question whether the LMRDA covers mixed unions, the Eleventh Circuit has read the Act's definition of labor organization "to include those associations of workers that deal with *any* 'employer,' as defined by the Act." *Hester v. International Union of Operating Eng'rs*, 818 F.2d 1537, 1541 (11th Cir.), *reh'g denied*, 830 F.2d 172 (11th Cir.1987), *vacated on other grounds*, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963, *reaff'd in pertinent part*, 878 F.2d 1309, 1310 (11th Cir.1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1808, 108 L.Ed.2d 939 (1990). Because the Act covers employees working for private employers, the Eleventh Circuit reasoned, unions representing private employees as well as federal employees also are subject to the Act. *Id.* Other circuits have likewise applied the Act to mixed unions. *See, e.g., Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.1994); *Martinez v. AFGE*, 980 F.2d 1039, 1041–42 (5th Cir.1993); *Berardi v. Swanson Memorial Lodge No. 48*, 920 F.2d 198, 201–02 (3d Cir.1990). Although this circuit has not explicitly addressed the issue, we have taken approving notice of the Eleventh Circuit's position. *See Hawaii Gov't Employees Ass'n Local 152 v. Martoche*, 915 F.2d 718, 720 & n. 15 (D.C.Cir.1990) (holding that a nonprofit educational organization was not a political subdivision of state government and, thus, was subject to the LMRDA). Because we think the Eleventh Circuit's approach is consistent with the Act, we agree with the district court that the AFGE, a mixed union, is subject to the Act.

■ We also agree with the district court that Wildberger does not lose LMRDA protection merely because his local consists only of government employees. Although the Department's regulations provide that locals composed purely of government employees are not subject to the Act, the regulations are silent on whether the Act protects members of such locals from actions of the mixed union parent. *See* 29 C.F.R. § 451.3(a)(4). Again, we look to the Eleventh Circuit. Noting that the Act's definition of "member" does not differentiate between private and public sector employees, the

Eleventh Circuit concluded that "[i]f a union is subject to the LMRDA, then all of its members, whether employed by the private or public sector, are protected by the Act's bill of rights." *Hester*, 818 F.2d at 1542 n. 13. Because Congress enacted the LMRDA to protect workers from corrupt leadership in unions representing private sector employees, denying that protection to government employees who are members of such unions makes little sense. *See id.* at 1542 & n. 12 (noting that the Act excludes purely government unions because they "did not have the power associated with corrupt leadership"). Therefore, although Wildberger's local consists only of federal employees, he too is protected by the Act, because the parent organization is covered by the LMRDA.

### III.

Abandoning many of his district court arguments, Wildberger claims here only that he was deprived of his right to trial by an impartial tribunal as guaranteed by Section 101(a)(5) of the LMRDA. 29 U.S.C. § 411(a)(5) (1994). According to Wildberger, allowing a single individual, Sturdivant, a political opponent, to initiate the investigation against him, to determine that probable cause existed to prefer charges, to select a trial committee composed of Sturdivant's political supporters, and then to sit as the ultimate adjudicator, violates the LMRDA.

In denying Wildberger's motion for summary judgment, the district court rejected his claim that "Sturdivant 'rigged' the trial committee by appointing his political supporters." *Wildberger v. AFGE*, No. 91–2316, slip op. at 7 (D.D.C. May 8, 1995). According to the district court, Wildberger's claim of bias failed because it rested only on the "bare allegation that the members of the trial committee were political supporters of Sturdivant," and because it included no concrete "charges of bias, prejudgment, involvement in the factual issues, or other typical evidentiary claims of partiality." *Id.* In reaching this conclusion, the district court relied on Sturdivant's testimony that he did not know whether the members of the trial committee were his political supporters. The district court also thought that Sturdivant had little

motive to harm Wildberger: although a political opponent, Wildberger had too little power within the union to pose a significant threat to Sturdivant. *Id.* at 7–8.

■ We begin our review by examining the procedural protections required by the LMRDA. Section 101(a)(5) of the Act provides:

No member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any office thereof unless such member has been … (C) *afforded a full and fair hearing.*

29 U.S.C. § 411(a)(5) (emphasis added). Under this provision, we must "scrutinize" a union's disciplinary proceedings, "interven[ing] only if there has been a breach of fundamental fairness." *Ritz v. O'Donnell*, 566 F.2d 731, 737 (D.C.Cir.1977). The full and fair hearing clause does not require unions to provide the " 'full panoply of procedural safeguards found in criminal proceedings,' " but only to comply with the " 'fundamental and traditional concepts of due process.' " *Id.* at 735 (quoting *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975)). A fundamental component of due process is the right to trial by an unbiased tribunal. *See, e.g., Ritz*, 566 F.2d at 737 (reviewing and ultimately rejecting claim that the proceeding was biased where two of the charging parties had worked for the same company as two members of the union appeals board and had only minimal involvement in the appeal); *Tincher*, 520 F.2d at 855 (finding "it inherently improper" for a person charged in a collateral proceeding by the accused "to participate as a committee member in the accused's disciplinary hearing"); *Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24–P*, 473 F.2d 359, 363–64 (6th Cir. 1973) (the fact that the same parties who investigated the union member tried the charges against the member contributed to court's finding that he had been denied a full and fair hearing).

Wildberger's central claim is that the national union denied him the right to trial by an unbiased tribunal. Sturdivant, Wildber-

ger claims, "deliberately employed his considerable authority to serve as accuser, prosecutor, grand jury, judge, and jury in conducting a lengthy investigation of an intra-union opponent, composing charges, and then taking every step necessary to ensure that his opponent would be ridden out of the union." Wildberger Br. at 28. In support of his claim that Sturdivant and the trial committee had reason to prejudge him, Wildberger points to several instances in which he challenged Sturdivant's actions. In February, 1990, for example, he wrote to an SBA official, severely criticizing Sturdivant and other AFGE officers and accusing them of various improper activities: seeking to control Local 2532; harassing officers and agents of Local 2532; embezzling money from the local; and violating various racketeering laws. In a subsequent letter to Sturdivant, the SBA official complained that Wildberger's charges against AFGE members made it difficult to establish a working relationship with the local, and asked Sturdivant to intervene. In response, Sturdivant advised the SBA official that AFGE counsel was reviewing the matter and would take "appropriate action." Wildberger also wrote to the Office of Labor–Management Standards of the United States Department of Labor asking it to require the National AFGE to lift its trusteeship over Council 228.

As support for his claim that he was a political opponent of Sturdivant, Wildberger cites a letter he wrote to Sturdivant in May 1989 declaring his intention to run against Sturdivant for union president (he later withdrew from the race). Wildberger also points to documents indicating that Sturdivant's supporters opposed Wildberger's candidacy for Council 228 president in 1988. According to Wildberger, because of this rivalry, Sturdivant invoked the disciplinary procedures and handpicked a trial committee composed of Sturdivant's supporters essentially to stack the deck against him.

Not surprisingly, appellees offer a different view of these events. They claim that the union constitution fully authorized the procedures Sturdivant employed and that Wildberger had a full and fair hearing. They vigorously dispute any claims of trial committee bias. Wildberger, appellees argue, was not a threat to Sturdivant: while Sturdivant was a popular president, Wildberger was a little known player. According to appellees, Sturdivant did not know whether the members of the trial committee were his political supporters. Moreover, they argue, many union members supported Sturdivant, and the trial committee members played only minor roles in re-electing him. In any event, they argue, none of the members of the trial committee knew anything about Wildberger until the disciplinary proceedings began.

At the outset, we agree with appellees that the AFGE national constitution authorizes the procedures Sturdivant used. To be sure, the union's constitution provides that, in most circumstances, the local chapter tries union members. Another provision of the constitution, however, authorizes the National President to commence disciplinary procedures after determining that "conditions within a local are such that a fair and impartial trial cannot be conducted." Relying on an AFGE pamphlet entitled "Investigation Committee Guidelines and Procedures," Wildberger argues that before the President can invoke Article IX, Section 5 powers, either the charging or the charged party must make a formal "showing" that the local cannot conduct a fair and impartial investigation. The union constitution does not, however, so require. In fact, the constitution suggests that the President may determine that a local trial is impossible without any input from the charged party. In any event, we think the allegations leveled by Sturdivant and gathered by his staff, including that the local chapter had failed to hold regular meetings and elections and that Wildberger had threatened an employee, provided a reasonable basis for bypassing the local investigation procedure.

This brings us to Wildberger's argument that the combination of functions authorized by the union's constitution violates the LMRDA's fair hearing requirement. Pursuant to Article IX, Section 5, the President may either appoint a committee of investigation to determine whether probable cause exists for charging the accused or bypass a

committee of investigation and appoint a trial committee. The trial committee then makes recommendations to the President who makes the final decision. In this case, Sturdivant bypassed the committee of investigation, stating in his deposition that, on the basis of his staff's investigation, he determined that probable cause existed to charge Wildberger. Consistent with the constitution, Sturdivant then appointed a trial committee and made the final decision based on the committee's recommendations.

We see nothing inherently wrong with the union constitution authorizing the President to determine probable cause, prefer the charge, appoint a trial committee, and then make the ultimate decision based on the committee's recommendations. Were this a criminal case, where due process requirements are more stringent, such an overlap of investigative, prosecutorial, and adjudicatory functions would violate due process. For instance, in *In re Murchison*, relied on by Wildberger, the Supreme Court, stating that due process requires an absence of unfairness and the "probability of unfairness," found a due process violation when a state judge convicted the defendant of contempt based on testimony before the same judge in his capacity as a one-person grand jury. 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). According to the Court, "[f]air trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer," and "it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' ... session." *Id.* at 137–38, 75 S.Ct. at 626.

In non-criminal proceedings, such an overlap of functions does not always violate due process. In *Withrow v. Larkin*, the Supreme Court held that in administrative agency proceedings—where courts have a greater "supervisory role [than] over union disciplinary proceedings," *Ritz*, 566 F.2d at 737—a single body investigating, initiating proceedings, and adjudicating does not necessarily violate due process. 421 U.S. 35, 53–55, 95 S.Ct. 1456, 1467–69, 43 L.Ed.2d 712 (1975). In *Withrow*, when a state medical examining board, following investigative

hearings, determined that the plaintiff doctor had engaged in misconduct, the doctor sought to enjoin the same board from conducting a contested hearing to determine whether to suspend his license. 421 U.S. at 38–41, 95 S.Ct. at 1460–62. Rejecting the doctor's challenge, the Court found that "the combination of investigation and adjudicative functions [did not] necessarily create[ ] an unconstitutional risk of bias in administrative adjudication[s]." *Id.* at 47, 95 S.Ct. at 1464. Requiring administrative agencies to maintain a rigid separation of functions, the Court reasoned, would deprive agencies of the flexibility needed to conduct their complex and varied functions. *Id.* at 49–51, 95 S.Ct. at 1465–67. The Court concluded that without specific evidence of bias, "the mere exposure to evidence presented in nonadversary investigative procedures is insufficient ... to impugn the fairness of the Board members at a later adversary hearing." *Id.* at 55, 95 S.Ct. at 1468.

■ In the case before us, therefore, the union constitution's combination of investigative, prosecutorial, and adjudicatory functions in the President does not, by itself, violate the LMRDA. *Withrow* directs us to assume that the President is a person " 'of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Withrow*, 421 U.S. at 55, 95 S.Ct. at 1468 (quoting *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)). The fact that the President makes the initial probable cause determination, therefore, does not mean that, after reviewing all the evidence and the recommendations of an impartial trial committee, he cannot fairly make the ultimate decision. Nor does the fact that the President and his staff selected the trial committee mean that the committee is biased against the accused.

■ Where, however, evidence casts doubt on the partiality of the President, the combination of prosecutorial and adjudicatory functions in a single person can present due process concerns. Although we do not presume that the mere combination of prosecutorial and adjudicatory functions leads to bias, "we should be alert to the possibilities

of bias that may lurk in the way particular procedures actually work in practice." *Withrow,* 421 U.S. at 54, 95 S.Ct. at 1468. *Withrow* thus emphasized that its holding "does not ... preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Id.* at 58, 95 S.Ct. at 1470. We believe that this is such a case.

All parties agree that Sturdivant initiated the investigation against Wildberger; that Sturdivant supervised the investigation, receiving reports from his staff regarding Wildberger's alleged misdeeds; that he determined probable cause, that trial at the local level was not possible, and that a committee of investigation was unnecessary; that Sturdivant selected the trial committee; and that he made the final decision. When combined with the undisputed evidence that Sturdivant was repeatedly the focus of Wildberger's criticism and that Wildberger was at one time Sturdivant's political opponent—albeit a minor one—we can no longer assume that these procedures guaranteed Wildberger a "full and fair hearing." *See Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464 (probability of unfairness "too high to be constitutionally tolerable" where the adjudicator "has been the target of personal abuse or criticism from the party before him").

■ The district court viewed the issue differently. Considering the allegations against Wildberger and the alleged dysfunction in the local, the district court found that Sturdivant had good cause for bypassing the local trial committee. It also rejected Wildberger's claims that the trial committee was biased, finding that his "bare allegation[s] that the members of the trial committee were political supporters of Sturdivant" were insufficient to show that either Sturdivant or the committee had prejudged Wildberger. *Wildberger,* slip op. at 7. Although we agree with the district court that Sturdivant had good cause for bypassing the local's investigation committee, and although we also agree that Wildberger provided no evidence that either Sturdivant or the trial committee had actually prejudged him, we think the district court unduly restricted its inquiry by

requiring Wildberger to show actual bias. In view of Wildberger's criticism of Sturdivant, the district court should have focussed on the risk of bias present in the procedures employed by Sturdivant. Although an early Fourth Circuit case suggests that courts have the power to review only claims of actual bias, *Parks v. International Bhd. of Elec. Workers,* 314 F.2d 886, 912–13 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), other circuits, including this one, have since reviewed challenges to union procedures that do not involve claims of actual bias. *See Ritz,* 566 F.2d at 737; *Tincher,* 520 F.2d at 855; *Kuebler,* 473 F.2d at 363–64. *Tincher* is a good example. Citing *Withrow* 's holding that " 'the probability of actual bias' " by the judge is " 'too high to be constitutionally tolerable' " in cases in which the adjudicator " '*has been the target of personal abuse or criticism from the party before him,*' " the court found an LMRDA violation where a person "charged by [the] accused in a collateral proceeding ... participate[d] as a committee member in the accused's disciplinary hearing." 520 F.2d at 855 (citing *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464–65). Finding "immaterial" an affidavit by the committee member that the charge had not affected his decision, the court stated that "[t]he circumstances themselves, by presenting a significant danger of bias, created the inherent impropriety." *Id.*

Accepting *Withrow* and *Tincher*'s focus not just on actual bias, but also on circumstances that could create a significant risk of actual bias, we conclude that Sturdivant and the National AFGE violated section 411(a)(5) of the LMRDA. In view of Wildberger's challenges to Sturdivant's actions as president, the procedures Sturdivant used presented a "significant danger of bias," sufficient to violate the Act. *Tincher,* 520 F.2d at 855. Sturdivant could have easily avoided this danger by appointing a committee of investigation pursuant to Article IX of the union constitution. An independent committee responsible for the probable cause determination would have protected Wildberger from any risk of prejudgment by Sturdivant, the ultimate decisionmaker. Furthermore, with an independent committee of investigation,

Sturdivant would not have supervised the very fact finding that became the basis of the charge. To protect Wildberger from the risk of politically or personally motivated charges, Sturdivant should therefore have appointed an independent committee of investigation, rather than determining probable cause based on the evidence gathered by his own staff.

We reverse the district court's grant of summary judgment for Sturdivant and the National AFGE. We remand for further proceedings consistent with this opinion.

*So ordered.*