Richard Dean SAWYER, III, Plaintiff–Appellant,

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO and John Sturdivant, Defendants–Appellees.

No. 98–9054.

United States Court of Appeals, Second Circuit.

Argued April 8, 1999.

Decided June 4, 1999.

Richard Dean Sawyer III, Bronx, NY, submitted a pro se brief.

Martin R. Cohen, Bala Cynwyd, Pa., Mark D. Roth, Washington, DC, submitted a brief for defendants-appellees.

Before: WINTER, Chief Judge, and NEWMAN and SOTOMAYOR, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal requires us to clarify the circumstances under which a record will suffice to indicate that a *pro se* litigant had sufficient awareness of the consequences of a summary judgment motion to permit its adjudication, despite lack of explicit notice by a moving party or a district court that such a motion will be granted if allegations of fact are not adequately controverted by affidavit. Richard D. Sawyer, III appeals *pro se* from the June 12, 1998, judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, Chief Judge) granting summary judgment to the American Federation of Government Employees ("AFGE" or "Union") and dismissing Sawyer's action against the AFGE alleging

procedural violations of the Labor Management Reporting and Disclosure Act ("LMRDA"). The District Court ruled that Sawyer's suspension from the Union was carried out with all the procedural protections necessary for a "full and fair hearing" under the LMRDA. We conclude that summary judgment was properly entered, both procedurally and on the merits, and we therefore affirm.

## Background

At the time of the District Court's decision, Sawyer was an employee of the Veterans Administration ("VA") Medical Center in the Bronx, New York. Employees of the Center are represented by Local 1168 of appellee AFGE. The AFGE, headquartered in Washington D.C., has more than 1000 locals throughout the country. The national president of the AFGE is appellee John Sturdivant. Rita Mason is the national vice-president for the district office of AFGE that supervises locals in the northeast region of the country, including New York.

In November 1991, Sawyer was executive vice-president of the VA Medical Center local, and was apparently elected to the presidency of the local in November 1992. Sawyer was suspended from the union by a membership vote in December 1992, a vote that may have been rigged. In March 1993, due to deteriorating conditions at the local, Sturdivant placed Local 1168 in trusteeship. The AFGE National Executive Council reversed Sawyer's expulsion on procedural grounds and appointed him an acting vice-president of the local for the duration of the trusteeship. The AFGE constitution requires the removal of the elected officers of a local when a trusteeship is imposed and the holding of a new local election at the end of the trusteeship. In April 1993, Sawyer wrote to Sturdivant proposing that the trusteeship be lifted and that Sawyer be appointed president of the local, pursuant to the November 1992 election. The letter was forwarded to Mason, who replied to Sawyer by letter, declining his proposal and stating that the trusteeship would continue.

Some time in the latter part of 1993, Sawyer began circulating materials within the VA Medical Center urging the employees to oust the AFGE as their collective bargaining representative and to join a new organization headed by Sawyer, which would replace AFGE as the bargaining representative. These materials included petitions that purported to allow employees to vote to decertify AFGE and certify Sawyer's organization as the bargaining representative.

Informed by Mason of Sawyer's activities, Sturdivant notified Sawyer by certified mail in March 1994 that Sawyer was being charged with violation of section 2(a) of article XVIII of the AFGE constitution, which reads:

> 2. Charges may be preferred for conduct detrimental or inimical to the best interests of the Federation. Offenses against this Federation include the following:
>
> > (a) Advocating, encouraging or attempting to bring about a secession from the Federation of any local or of any member or group of members. Penalty for conviction under this subparagraph shall be expulsion;....

Sturdivant also informed Sawyer that, because of the conditions prevailing at Local 1168, a "trial committee" of three members from other AFGE locals would conduct Sawyer's trial, pursuant to article IX § 5 of the AFGE constitution.

The committee held the trial in April 1994. The case was prosecuted by a Union member chosen by the national organization. Sawyer and his representative attended the trial, and were given a full opportunity to present documentary and testimonial evidence and to cross-examine opposing witnesses. The trial committee recommended to Sturdivant that Sawyer be suspended from the Union for thirteen years for his violation of the anti-secession

provision of the AFGE constitution. In May 1994, Sturdivant accepted the committee's recommendation and ordered the suspension. Sawyer appealed to the National Executive Council of AFGE, which affirmed Sturdivant's decision. In mid–1995, the trusteeship over Local 1168 was lifted.

Sawyer commenced this action *pro se* against AFGE and Sturdivant in October 1996. He alleged that his suspension violated the LMRDA because he was not afforded a "full and fair hearing." The LMRDA provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (1994). Because the AFGE represents not only government but also private sector employees, it has been held to be a "mixed union" covered by the LMRDA. *See Wildberger v. AFGE*, 86 F.3d 1188, 1192–93 (D.C.Cir. 1996). In May 1997, the defendants moved to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(c) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment pursuant to Rule 56. They submitted affidavits and exhibits. Nothing in the record indicates that the District Court or the defendants expressly notified Sawyer that he must oppose the motion with affidavits in order to preserve his claims. Nevertheless, Sawyer submitted substantial opposition papers, as detailed below.

In June 1998, the District Court elected to "deal solely with the summary judgment phase of the motion," and granted summary judgment for the defendants. *Sawyer v. AFGE*, No. 96 Civ. 7599 (TPG), 1998

WL 307055, at *1 (S.D.N.Y. June 11, 1998). The Court found that there was no material issue of disputed fact as to the fullness and fairness of the hearing accorded Sawyer. Judgment dismissing the complaint was entered June 12, 1998, and Sawyer filed a timely notice of appeal on July 6, 1998.[1]

## Discussion

### I. Propriety of Adjudicating Summary Judgment Motion

Because it is not obvious to a layman that a motion for summary judgment supported by affidavits requires a response supported by similar affidavits in order to preserve factual disputes for trial, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988), we have held that "[t]he failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal." *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994). We have reversed orders granting summary judgment when a district court has failed to notify *pro se* litigants of the nature and consequences of the opposing party's motion and a *pro se* party has entirely failed to respond to the motion. *See, e.g., id.* at 8–9; *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *cf. National Ass'n of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*, 850 F.2d 904, 911–12 (2d Cir. 1988) (holding that counseled nonmoving party was entitled to specific notice of court's intention to treat Rule 12(c) motion as summary judgment motion, even when motion was styled as "in the alternative, for summary judgment" and when nonmoving party submitted factual material on certain issues).

We have recognized exceptions to this obligation of a district court when the moving party has provided the *pro se* litigant

---

**1.** The District Court's docket sheet incorrectly states that the notice of appeal was filed on July 31, 1998, but the date stamp on the notice of appeal clearly indicates that it was filed on July 6, 1998.

with the requisite notice, *see Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996), or when the *pro se* litigant responds to the summary judgment motion with factual and legal submissions indicating that he understood the nature and consequences of summary judgment and "the need to set forth all available evidence demonstrating a genuine dispute over material facts," *M.B. # 11072–054 v. Reish*, 119 F.3d 230, 232 (2d Cir.1997). In *M.B.*, we held that the *pro se* plaintiff's submissions, including a 27–page declaration of facts with 104 pages of exhibits, a 40–page memorandum of law, a counterstatement of disputed facts, a cross-motion for summary judgment, and a request for further discovery, showed that he "understood the consequences of a summary judgment motion and the requirements of a successful response." *Id.*

■■■ Nonetheless, in the absence of explicit notice, the mere existence of a response does not automatically give rise to the inference that a *pro se* litigant understood the nature of a summary judgment motion. As we recently held,

> the concerns that we have expressed regarding *pro se* litigants' understanding of summary judgment are not extinguished by the mere fact that a *pro se* litigant files a response of some sort. Where the proper notice has not been given, the mere fact that the *pro se* litigant has made some response to the motion for summary judgment is not dispositive where neither his response nor other parts of the record reveal that he understood the nature of the summary judgment process.

*Vital v. Interfaith Medical Center*, 168 F.3d 615, 621 (2d Cir.1999). In *Vital*, we reversed a district court's grant of sum-mary judgment when, in the absence of any explicit notice as to the nature of the defendant's summary judgment motion, the *pro se* plaintiff's only response to the motion was a one-paragraph memorandum with one exhibit, without any counterstatement of disputed facts or any evidence on most of the material issues in the case. *See id.; see also McPherson v. Coombe*, 174 F.3d 276 (2d Cir.1999). *Vital* should not be understood, however, to set down an unyielding rule prohibiting district courts from acting upon motions for summary judgment sought against *pro se* litigants in the absence of explanatory notice. On the contrary, the issue in each case remains whether from all of the circumstances, including the papers filed by the *pro se* litigant, it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it.

■■ In the pending case, Sawyer filed a number of documents in response to the defendants' motion. Initially, he indicated that he had read the motion papers and that he "look[ed] forward to trial at its earliest convenience." [2] Later, he submitted a "Summary" containing conclusory allegations supporting his theory of the "conspiracy" against him and quoting relevant provisions of the AFGE constitution. He then filed an "Addendum to Statement of May 8 1997" [3] and "Submission of Facts." Sawyer stated that this submission provided "documentation that is apparently lost or disregarded by the AFGE" and that he had "witnesses who will provide not[a]rized statements before the 20 [J]une 1997 trial date." The submission made three factual contentions:

---

**2.** It is apparent from Sawyer's usage in other documents and in his brief on appeal that by "trial" in this context he means "decision" by the Court on the motion. Although it was not filed until April 29, 1998, the date stamps on this document indicate that it was received in Chief Judge Griesa's chambers on May 9, 1997.

**3.** "Statement of 8 May 1997" apparently refers to the affirmations and statement of undisputed facts accompanying the defendants' motion. Although this document and its attachments were not filed until June 11, 1998, the date stamps indicate that they were received in Chief Judge Griesa's chambers on May 19, 1997.

(1) Sawyer had been elected president of AFGE Local 1168 in November 1992; (2) Sawyer possessed certified mail receipts for mail between Sturdivant, Mason, and AFGE General Counsel Mark Roth, the content of which "[could] be provided," that would demonstrate a "[c]onspiracy to overthrow a valid election"; and (3) the trial committee's hearing had been procedurally inadequate because, among other things, it had been a "closed meeting," Sawyer's peer group "was not represented or notified," and portions of the hearing transcript tape had been altered or erased. Sawyer stated that he had submitted "just enough data to v[e]rify [his] claim." He attached documents reflecting the national AFGE's imposition of trusteeship on Local 1168, its treatment of him during that period, and the local's attempt in December 1992 to expel him after his election to the local presidency. On September 30, 1997, Sawyer moved to depose Sturdivant and Mason, a motion denied by Chief Judge Griesa on procedural grounds with a reminder that Sawyer could contact the Southern District's Pro Se Clerk's office for procedural assistance with discovery.

Sawyer's submissions satisfy us that he understood his burden to produce evidence opposing the motion for summary judgment. Sawyer attempted to show (1) errors or omissions in the defendant's motion by pointing out that he had been elected president of the local; (2) a conspiracy to overthrow his election; (3) an attempt by Sturdivant to stifle a political opponent; and (4) procedural irregularities in his trial committee hearing. Sawyer evidently believed that the documents. he submitted substantiated the inadequacy of the defendants' motion and "verified" his claim.

By contrast to the situation in *Vital*, 168 F.3d at 621, the record here shows that Sawyer knew that he was required to produce evidence supporting the issues of material fact that he needed to preserve for trial. This showing is all that is required. *See M.B.*, 119 F.3d at 232; *Ruotolo*, 28 F.3d at 8–9. Ultimately, Sawyer's opposition to the summary judgment motion failed not because he inadequately disputed key facts, but because his position on the merits was legally insufficient.

## II. The Merits

Applying the usual standards governing review of a grant of summary judgment and construing the claims of the *pro se* litigant liberally, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594 (1972), we conclude that the defendants were entitled to summary judgment. In his initial pleadings, Sawyer relied exclusively on the facts and analysis of *Wildberger*, attaching a copy of the opinion in that case to his complaint. In *Wildberger*, the District of Columbia Circuit held that the national AFGE had violated the fair hearing provision of the LMRDA because the national president, Sturdivant, had played a significant role in investigating and deciding charges brought against a local union official who was a vociferous critic and political opponent of Sturdivant himself, creating an unacceptable risk of partiality and bias. *See Wildberger*, 86 F.3d at 1195–97; *see also Tincher v. Piasecki*, 520 F.2d 851, 854–55 (7th Cir.1975). We agree with Chief Judge Griesa's conclusion, *see Sawyer*, 1998 WL 307055, at *3–*4, that Sawyer's case differs significantly from *Wildberger*. Here, there was no indication of any personal conflict between Sawyer and Sturdivant; indeed, the AFGE National Executive Council had reversed the earlier disciplinary action taken by Local 1168 against Sawyer, and Sawyer had been appointed acting vice-president of the local by the national organization during the trusteeship. Unlike the circumstances in *Wildberger*, Sturdivant did not initiate the proceeding against Sawyer that led to the suspension, and although Sturdivant appointed the trial committee and made the final disciplinary decision based on its recommendation, his actions were incident to his duties under the Union constitution, and there was no indication of bias. Finally, it is clear that Sawyer violated the

AFGE constitution by urging members of Local 1168 to secede from the Union and to join a new organization of which he would be president. Neither in the Union trial committee hearing nor in the proceedings before the District Court did Sawyer even claim that he had evidence tending to dispute these issues material to his claim. The documents produced by Sawyer in his response to the defendants' summary judgment motion raised no genuine dispute as to material issues.[4] Summary judgment was properly granted.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

---

4. In his one-page brief on appeal, Sawyer appears to have abandoned his "full and fair hearing" LMRDA claim and instead seeks to press an argument that the placing of Local 1168 in trusteeship in 1993 deprived him of his rights under the LMRDA. In his opposition to summary judgment, Sawyer had cited this alleged violation as probative of the unfairness of his hearing. Because this claim was neither raised in his complaint nor passed upon by the District Court, however, we decline to consider it on appeal. *See, e.g., Thomson v. Larson,* 147 F.3d 195, 206 (2d Cir.1998).