Gene MARSHALL, Plaintiff,

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL—CIO, and John Sturdivant, Defendants.

No. Civ. 96–609–R.

United States District Court, W.D. Oklahoma.

Dec. 23, 1997.

As Corrected Jan. 9, 1998.

Emmanuel E. Edem, Nicole M Vernier–Gelven, Norman Edem McNaughton & Wallace, Oklahoma City, OK, for Gene Marshall, plaintiff.

Thomas P. Howell, IV, Joe E. Edwards, Ricki V Sonders, Day Edwards Federman Propester & Christensen, Oklahoma City, OK, Joe Goldberg, American Federation of Government Employees General Counsel, Washington, DC, for American Federation of Government Employees, AFL—CIO, John Sturdivant defendants.

## ORDER

DAVID L. RUSSELL, Chief Judge.

Before the Court is Defendants' motion for summary judgment on Plaintiff's Amended Complaint.[1] To support their motion, Defendants assert that they did not violate Plaintiff's rights to free speech under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* because the LMRDA's guarantee to union members of a special right to free. speech is subject to a labor organization's right to adopt and enforce reasonable rules as to members' responsibilities to the organization and as to conduct which members must refrain from that would interfere with the organization's performance of its legal and contractual obligations, citing 29 U.S.C. § 411(a)(2). Defendants further assert that the undisputed facts establish that Defendants did not deprive Plaintiff of a full and fair hearing under the LMRDA, *see* 29 U.S.C. § 411(a)(5)(C), pointing out that a "full and fair hearing" requires only that the disciplinary trial was conducted by "an unbiased trial body" which afforded a fair and impartial determination of guilt and that the union's findings were supported by "some evidence," citing *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL—CIO v. Hardeman,* 401 U.S. 233, 245–46, 91 S.Ct. 609, 617, 28 L.Ed.2d 10, 21–22 (1971); *Reyes v. Laborers' International Union of North America, Local 16,* 464 F.2d 595, 597 (10th Cir.1972), *cert. denied,* 411 U.S. 915, 93 S.Ct. 1542, 36 L.Ed.2d 307 (1973). With respect to Plaintiff's allegation that "Defendants concealed from the Plaintiff the fact that the United States Department of Labor [DOL] was without jurisdiction to hear Plaintiff's appeal of his expulsion from the AFGE," causing Plaintiff to initiate an appeal with the DOL and to sustain legal expenses defending Defendant's motions, Amended Complaint at ¶ XII, Defendants assert that Plaintiff fails to state a claim against these Defendants because he has failed to show any duty or breach of duty by Defendants, who gave Plaintiff written notice of his appeal rights in accordance with AFGE National's Constitution; Defendants never suggested that Plaintiff should seek relief from the DOL; and Plaintiff was represented by his own legal counsel. Finally, to the extent Plaintiff is asserting a claim for libel or slander, Defendants assert that because the only utterances by Defendants which Plaintiff alleges are defamatory were made during the disciplinary process, which ended in mid–1994, when the Convention adopted the Ad Hoc Committee's recommen-

---

1. After Defendants filed this motion, Plaintiff filed a Second Amended Complaint, amending only his allegations concerning subject matter jurisdiction pursuant to this Court's Order of November 26, 1997. All references herein are to the Amended Complaint but apply to the Second Amended Complaint as well.

dation in the final step in Plaintiff's internal appeal, Plaintiff's claim therefor is barred by the applicable one-year statute of limitations, Okla.Stat. tit. 12, § 95 (Fourth). Moreover, any defamation claim Plaintiff might have must be dismissed for nonpublication, Defendants assert, because circulation of the charges within AFGE National was privileged, Defendants assert, citing *Magnolia Petroleum Co. v. Davidson,* 194 Okla. 115, 148 P.2d 468, 471 (Okla.1944) (intracorporate communications privilege); *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1553 (10th Cir. 1995). Defendants point out that to the extent the charges were disseminated outside AFGE National, Plaintiff admits that he has no idea who did it.

### I. *Violation of Free Speech Rights Under the LMRDA*

Plaintiff alleges in his Amended Complaint that internal union disciplinary charges against him were "instigated in reprisal for Plaintiff's opposition to the actions of AFGE's President, Defendant John Sturdivant, and his supporters," Amended Complaint at ¶ VI; that Plaintiff's rights under Sections 101(a)(1) and (2) of the LMRDA, 29 U.S.C. § 411(a)(*l*) and (2), were violated "by the institution of charges against [him] in that Plaintiff's right to freedom of speech was violated by punishing Plaintiff for his political candidacy and opposition to positions held by Defendant John Sturdivant," *id.* at ¶ X; and that "acts of Defendants expelling Plaintiff from membership violated Plaintiff's rights under that section and under Section 609" of the LMRDA, 29 U.S.C. § 529. *Id.*

Defendants have moved for summary judgment on Plaintiff's claims for violation of his free speech rights under the LMRDA and/or for discipline in retaliation for the exercise of free speech rights under the LMRDA, citing only the proviso of 29 U.S.C. § 411(a)(2), and the existence of evidence that Plaintiff engaged in conduct that violated provisions of the constitutions of Local 916 and AFGE National. Plaintiff in response does not assert or argue that the constitutional provisions he was charged with violating were not "reasonable rules as to the responsibility of every member toward the organization as an institution and to … refraining from conduct

that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2). Rather, Plaintiff simply points to evidence of his opposition to views or positions espoused by Defendant John Sturdivant and to Plaintiff's candidacy for a national office and asserts that he was "punished" for these activities, in violation of his right to free speech. Thus, Plaintiff attempts to avoid summary judgment and create a factual issue by suggesting that the real reason or at least a reason why charges were brought against him and/or that he was disciplined was his exercise of speech rights protected by Section 411(a)(2).

With respect to his claim that Defendants violated Plaintiff's "free speech" rights under the LMRDA, Plaintiff has submitted evidence that he lobbied against a per capita tax increase at a Ninth District function in Joplin, Missouri prior to the 1991 AFGE National Convention at which Defendant John Sturdivant made an appearance to campaign for such a tax increase and that the two argued about the issue, with Sturdivant telling Plaintiff he was unreasonable because he didn't agree with an increase and the Plaintiff telling Sturdivant that he should sell the twenty-million dollar building in Washington, D.C., to help pay off his debt so the increase would not be needed. He has also submitted evidence that at an AFGE meeting in Dallas, Texas in the fall of 1991, Defendant Sturdivant told a group of individuals from Council 214 to the effect that the Plaintiff would not be playing bingo long because he (Sturdivant) did not think that what Marshall was doing was right. Additionally, Plaintiff submits evidence that Sturdivant supported Bob Ball's candidacy against Plaintiff for National VP and that Marshall "openly campaigned against John Sturdivant," Deposition of Gene Marshall (Exhibit "14" to Plaintiff's Brief) at p. 141, and that Sturdivant was opposed to Marshall's policy of taking every grievance to arbitration. Plaintiff implies that Defendants brought charges against him in retaliation for or to punish him for his opposition to Defendant Sturdivant's positions on issues and for his political candidacy.

Neither Defendants nor Plaintiff have cited any caselaw or made any attempt to pres-

ent the legal framework for analysis of their respective positions. The Tenth Circuit has not addressed a free speech claim under the LMRDA except one in which the speech involved "dual unionism," that is, where the Plaintiff was disciplined for assisting a rival union's adversarial effort to prompt a representation election and to displace the Plaintiff's union as incumbent. *See Aircraft Mechanics Fraternal Association v. Transport Workers Union of America, Local 514, Air Transport Division, AFL—CIO*, 98 F.3d 597 (10th Cir.1996). The Tenth Circuit held that "the disciplinary action taken by the union was a reasonable defense of its institutional integrity and, therefore, permissible under § 411(a)(2)." *Id.* at 598. The court thus affirmed the district court's summary judgment for the union and held that the union did not violate Section 411(a)(2) by suspending the plaintiff from membership. *Id.* at 602. The Tenth Circuit's decision in *Aircraft Mechanics Fraternal Association v. Transport Workers Union* is not particularly helpful in resolving free speech issues in this case, however, because the nature of the speech or expressive conduct involved herein to which Plaintiff points is very different from the "dual unionism" in the *Aircraft Mechanics* case which, arguably, is not even protected by § 411(a)(2), *see* 98 F.3d at 600 (the purpose of § 411(a)(2) and of the LMRDA generally is "that of assuring rank-and-file members' democratic participation in *intra*-union affairs"); because Plaintiff herein does not contend that his conduct cited in the union's charges, and for which he was at least ostensibly disciplined, did not implicate the union interests protected by the proviso in § 411(a)(2); and because the *Aircraft Mechanics* case did not involve an assertion such as that made herein that the conduct for which the plaintiff was ostensibly disciplined was not the real reason he was disciplined or that it was only one of the reasons he was disciplined as is the case herein, i.e., an assertion that the reasons given by the union for imposition of discipline were pretextual or that the union had mixed motives for bringing charges and imposing discipline and in either case violated Plaintiff's free speech rights.

At least one circuit has held that proof that a union disciplined a member for violation of a union's reasonable rules which it had a right to promulgate under the LMRDA constitutes an "affirmative defense." *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1469 (6th Cir.1992). That same circuit holds that to establish a *prima facie* case of discipline in retaliation for the exercise of free speech rights, in violation of § 411(a)(2), a plaintiff must prove the following: 1) that his conduct was an exercise of free speech as defined and protected by the LMRDA; 2) that the defendant took actions against him in substantial part because of this exercise of his rights under the LMRDA; and 3) that he was damaged and suffered injury as a result of the actions of the defendant. *Id.* at 1469. Other courts have taken the approach that a plaintiff's protected speech need only be *a* cause for the disciplinary action, not necessarily the primary cause or even substantial cause for the disciplinary action; that the existence of some evidence that the reason for the discipline was permissible and some evidence that the reason was impermissible creates a question of fact, *see Lamb v. Miller*, 660 F.2d 792, 794 (D.C.Cir.1981); *Waring v. International Longshoremen's Association, Local 1414*, 665 F.Supp. 1576, 1583 (S.D.Ga.1987); *cf. Galke v. Duffy*, 645 F.2d 118, 121–22 (2nd Cir.1981) (Oakes, J., dissenting); and that a defendant union establishes an affirmative defense to such a claim only by proving by a preponderance of the evidence that it would have taken the disciplinary action against the plaintiff union member in the absence of any protected speech by him. *See Waring v. International Longshoremen's Association, Local 1414*, 665 F.Supp. at 1583 (the shifting of burdens of proof would be dictated by the Supreme Court's decision in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977)). *See also Petramale v. Local No. 17 of Laborers International Union of North America*, 736 F.2d 13, 18 (2nd Cir.) (suggesting that *Mt. Healthy* burdens of proof may be applicable to a retaliatory discipline claim, in violation of a union member's free speech rights under the LMRDA, but deciding that the *Mt. Healthy* rule did not

apply to the case before it involving one undifferentiated incident giving rise to "inextricably intertwined" charges of disruption and slander), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984). *But see Bradford v. Textile Workers of America, AFL—CIO Local 1093,* 563 F.2d 1138, 1143–44 (4th Cir.1977) (suggesting that the *Mt. Healthy* rule is inapplicable and that a plaintiff only show that his protected speech was a cause of the disciplinary action taken against him by the defendants).

■■■ Under either (or any) of these approaches, and on the record before the Court, Defendants are entitled to summary judgment on Plaintiff's LMRDA claim for a violation of his free speech rights, whether brought pursuant to 29 U.S.C. § 411(a)(1) & (2), 29 U.S.C. § 412 or 29 U.S.C. § 529.[2] Plaintiff does not dispute that the constitutional provisions and rules or policies which he was charged with and disciplined for violating were reasonable rules as to the responsibilities of members toward the union and as to refraining from conduct that would interfere with the performance of the union's legal or contractual obligations, that is, that the rules which were enforced against him were rules which the union had a right to promulgate under the LMRDA, *see* 29 U.S.C. § 411(a)(2); *see also Aircraft Mechanics Fraternal Association v. Transport Workers Union of America, Local 514, Air Transport Division, AFL—CIO,* 98 F.3d at 599; *Black v. Ryder/P.I.E. Nationwide, Inc.,* 970 F.2d at 1467–69 (there must be a statutorily permissible basis for the discipline), to protect its institutional and financial integrity. There is

"some evidence," indeed substantial evidence, that Plaintiff engaged in conduct which violated those rules and thus that the disciplinary charges were brought and discipline imposed against the Plaintiff because of his violation of reasonable rules which the union was authorized to adopt and enforce. However, even assuming, without deciding, that Plaintiff has produced sufficient evidence to show the existence of a genuine issue of material fact as to whether he violated the union's reasonable rules so as to show the existence of a genuine issue of material fact as to the existence of Defendants' "affirmative defense," under the Sixth Circuit's approach, *see supra,* Plaintiff has wholly failed to submit evidence from which reasonable jurors could find that his LMRDA-protected speech was a substantial cause or a cause of the actions taken against him by the Defendants either in initiating disciplinary charges or in disciplining the Plaintiff, an essential element of a *prima facie* case of a violation of LMRDA speech rights under any of the approaches suggested above. Plaintiff has produced evidence that he engaged in LMRDA-protected speech but he has failed to submit any evidence of a nexus or causal relationship between his protected speech and the disciplinary charges and actions against him. The Court recognizes that a plaintiff asserting a claim for violation of his LMRDA free speech rights or for retaliatory discipline in violation of those rights may rely on circumstantial evidence to establish a *prima facie* case. *See Vandeventer v. Local Union No. 513 of the International Union of Operating Engineers, AFL—CIO,* 579 F.2d 1373, 1379 (8th Cir.), *cert denied,* 439 U.S. 984, 99 S.Ct.

---

**2.** Under the facts of this case, in which it is undisputed that the Plaintiff was actually expelled from union membership and disqualified from union membership for a period of 13 years, it is immaterial under which of these statutes Plaintiff's claim(s) is (are) brought because the result would be the same under any of them. *See Cehaich v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 710 F.2d 234, 238 & n. 8 (6th Cir.1983). *See generally Finnegan v. Leu,* 456 U.S. 431, 439–41, 102 S.Ct. 1867, 72 L.Ed.2d 239, 246–47 (1982); *Harvey v. Hollenback,* 113 F.3d 639, 642–43 (6th Cir.1997).

No genuine issue of material fact exists that Plaintiff was "disciplined" within the meaning of Sections 101(a)(5) and 609 of the LMRDA, 29

U.S.C §§ 411(a)(5) & 529, *see Breininger v. Sheet Metal Workers International Association Local Union No. 6,* 493 U.S. 67, 90 n. 13, 110 S.Ct. 424, 438 n. 13, 107 L.Ed.2d 388, 411 n. 13 (1989); *Finnegan v. Leu,* 456 U.S. at 438–39 nn. 9 & 10, 102 S.Ct. at 1872 nn. 9 & 10, 72 L.Ed.2d at 246 nn. 9 & 10, because Plaintiff's expulsion and suspension was "punishment authorized by the union as a collective entity to enforce its rules," *Breininger v. Sheet Metal Workers International Association Local Union No. 6,* 493 U.S. at 91, 110 S.Ct. at 438–39, 107 L.Ed.2d at 412, that is, action "undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership." *Id., quoting Miller v. Holden,* 535 F.2d 912, 915 (5th Cir.1976).

576, 58 L.Ed.2d 656 (1978). *See also Lamb v. Miller,* 660 F.2d at 794, *Bradford v. Textile Workers of America, AFL—CIO,* 563 F.2d at 1142–43. But Plaintiff has failed to point to any circumstantial evidence of a causal nexus between his political activity and speech to which he points and the bringing of charges or the imposition of discipline. Even applying a most liberal approach to the establishment of a causal relationship between protected conduct and adverse action alleged to have been taken in retaliation for protected conduct as part of a *prima facie* case in other contexts, *see Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1398 (10th Cir. 1997) (FLSA retaliatory discharge claim); *Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1261–62 (10th Cir. 1994) (retaliation in violation of conciliation agreement); *Smith v. Maschner,* 899 F.2d 940, 948 (10th Cir.1990) (§ 1983 claim for deprivation of due process and right of access to courts in retaliation for prior lawsuits); *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.), (Title VII retaliatory discharge); *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982), in which a temporal proximity between the protected activity and the adverse action may be sufficient to establish the causal connection element of a *prima facie* case, Plaintiff has failed to adduce evidence from which the causal connection element of a *prima facie* case could be inferred and established. The speech and expressive conduct to which Plaintiff points as LMRDA-protected speech occurred prior to the 1991 AFGE National Convention and in the fall of 1991. Plaintiff refers to having "openly campaigned against Mr. Sturdivant" in his brief, Plaintiff's Response to Defendant's Motion for Summary Judgment at p. 6, but it is clear from reference to Plaintiff's deposition and other evidence before the Court that Plaintiff is merely referring to his candidacy for National Vice–President (Ninth District) of AFGE National against Bob Ball whom, Plaintiff 10 testified, John Sturdivant supported. It is undisputed that Plaintiff ran for that position and against Mr. Ball in elections which were held in May of 1990 and in May of 1993. While Plaintiff in his testimony did not differentiate between the May,

1990 and May, 1993 elections, in referring to Defendant John Sturdivant's support of Bob Ball, it seems unlikely that Plaintiff was referring to the 1993 election inasmuch as there is evidence before the Court that the nine AFGE national vice presidents were opposed to anything which John Sturdivant did and that Ball endorsed Sturdivant's opponent for AFGE National President. Deposition of G.J. Peterson (Exhibit "45" to Defendant's Motion for Summary Judgment) at pp. 146–47. In addition to this speech and political activity, Plaintiff attests that throughout his term as President of Local 916, he took the position that all grievances that management did not settle would or should go to arbitration and that this approach was opposed by Defendant John Sturdivant, Affidavit of Plaintiff (Exhibit "15" to Plaintiff's Brief) at ¶ 2; *see also* Deposition of Plaintiff (Exhibit "14" to Plaintiff's Brief) at pp. 141–42. However, Plaintiff has not submitted any evidence showing that Defendant Sturdivant was aware of Plaintiff's position on arbitration or any competent evidence that the "214 Council President's" attempt to reprimand Plaintiff for "having taken a case to the Tenth Circuit without their pre-approval" *see* Deposition of Plaintiff at p. 141, was made at the direction of Defendant John Sturdivant. As to Plaintiff's testimony that "[o]ne of the charges against me was that I was abusing arbitration," Deposition of Plaintiff at p. 142, a review of the written charges, *see* Exhibit 8 to Defendants' Brief, reveals that this is patently untrue. Thus, in summary, there is evidence that Plaintiff engaged in protected speech advancing positions with which Defendant Sturdivant disagreed in 1990 and or 1991 and that Plaintiff ran for national office against a candidate whom Defendant Sturdivant supported in the May, 1990 election. It is undisputed that in January of 1993, the newly elected officers of Local 916 requested AFGE National's help in analyzing the status of Local 916's property and in investigating what appeared to be irregularities and improprieties concerning its financial affairs. Defendants' Motion for Summary Judgment, Statement of Undisputed Facts at ¶ 9, *see* Plaintiff's Response at pp. 1–4, and that as a result of this requested investigation by AFGE National, the charges against Plaintiff

were brought. It is also undisputed that Defendant John Sturdivant first issued written notice to Plaintiff of internal union charges against him on May 14, 1993. Thus, all of the protected speech or expressive conduct of Plaintiff which Plaintiff suggests was the reason for the initiation of charges and discipline taken against him, with the exception of Plaintiff's candidacy for the position of National Vice President (Ninth District) for the May, 1993 election, occurred approximately two or more years before charges were brought against the Plaintiff. The two-year period between the alleged LMRDA-protected speech and the initiation of internal union charges against the Plaintiff is too great to justify an inference of a causal relationship between the alleged protected speech and the disciplinary action. With respect to Plaintiff's expressive conduct in the form of his candidacy for the position of National Vice President (Ninth District) in connection with the May, 1993 election, there is close temporal proximity between that expressive conduct and the filing of charges but this evidence standing alone does not support an inference of a causal connection between Plaintiff's expressive conduct and the bringing of disciplinary charges given the existence of evidence before the Court of animosity or political differences between Bob Ball, the person against whom Plaintiff ran, and Defendant John Sturdivant, *see supra;* and uncontroverted evidence that local union officials requested the investigation which led to the filing of charges, an Assistant General Counsel of AFGE National conducted an investigation of the property and financial affairs of Local 916 at the request or order of Defendant John Sturdivant and that as a result of that investigation Defendant Sturdivant issued written notice of internal union charges against Plaintiff.[3] Thus, Plaintiff has failed to submit evidence of even a *prima facie* case of a violation of his LMRDA-protected free speech rights by retaliatory discipline or otherwise, or evidence from which reasonable jurors could find that even a reason for Defendants' disciplinary action

against the Plaintiff was Plaintiff's LMRDA-protected speech and/or expressive conduct. *A fortiori,* Plaintiff has failed to produce evidence from which reasonable jurors could find that Defendants' proffered reasons for initiating charges against and discipline of the Plaintiff were pretextual (assuming, for purposes of this statement, that Defendants have not established a complete affirmative defense, in accordance with the Sixth Circuit approach, *supra*) such that Plaintiff could avoid summary judgment on this claim. *See generally Conner v. Schnuck Markets, Inc.,* 121 F.3d at 1396–1399.

## II. *LMRDA Procedural Due Process Claim*

In his Amended Complaint, Plaintiff alleges that the tribunal which conducted Plaintiff's trial on internal union disciplinary charges was selected by Defendant Sturdivant, Amended Complaint at ¶ VII, and that his rights under Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), were violated in that "Plaintiff was denied a full and fair hearing." *Id.* at ¶ X.

Section 411(a)(5) of Title 29 of the United States Code sets out the procedural requirements which must be observed when a union disciplines one of its members:

> No member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with specific written charges; (2) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

It is not disputed that Plaintiff was "served with specific written charges" and that he was afforded "a reasonable time to prepare his defense." *Id.* Thus, the procedural requirement at issue in this case is whether Plaintiff received "a full and fair hearing" within the meaning of the LMRDA. The guarantee of a "full and fair" disciplinary

---

**3.** At best, the temporal relationship between Plaintiff's political candidacy against Bob Ball in 1993 and the institution of charges against the Plaintiff constitutes a "scintilla" of evidence of a

causal relation between Plaintiff's protected expressive conduct and the adverse action, considering the other facts and circumstances herein.

hearing does not require a union to provide the "full panoply of procedural safeguards" necessary in a criminal case but only that the hearing comport with the fundamental and traditional concepts of due process. *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975). Thus, a "full and fair hearing" requires that the charging party produce some evidence at the disciplinary hearing to support the charges and that any conviction on the charges be supported by "some evidence." *See International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL—CIO v. Hardeman*, 401 U.S. 233, 245–46, 91 S.Ct. 609, 617, 28 L.Ed.2d 10, 21(1971); *Black v. Ryder/P.I.E. Nationwide Inc.*, 970 F.2d 1461, 1467–69 (6th Cir.1992) ("some evidence" standard governs judicial review with respect to the procedural adequacy of union disciplinary proceeding). "There is no requirement of substantial evidence." *Ritz v. O'Donnell*, 566 F.2d 731, 737 (D.C.Cir.1977). Additionally, a "full and fair hearing" requires trial by an unbiased tribunal, a fundamental component of due process. *See Wildberger v. American Federation of Government Employees, AFL—CIO*, 86 F.3d 1188, 1193 (D.C.Cir.1996) and cases cited therein. The Tenth Circuit has summarized a trial court's role in reviewing a union's disciplinary proceeding to determine whether the requirements of a "full and fair hearing" have been met as follows:

> That court, when reviewing such disciplinary action is not free to substitute its judgment for that of the Union; it must uphold the Union's findings if supported by any evidence produced at the disciplinary trial conducted by an unbiased trial body which afforded a fair and impartial determination of guilt.
>
> *Reyes v. Laborers' International Union of North America, Local Union No. 16*, 464 F.2d 595, 597 (10th Cir.1972), *cert. denied*, 411 U.S. 915, 93 S.Ct. 1542, 36 L.Ed.2d 307 (1973).

Applying this standard, the Court finds that Defendants have shown the non-existence of a genuine issue of material fact as to Plaintiff's receipt of a "full and fair hearing" on the disciplinary charges brought inasmuch as Defendants have submitted evidence showing 1) that there was some evidence to support each of the twenty-three charges of which Plaintiff was ultimately determined to be guilty; and 2) that the three members of the Trial Committee were not biased or at least not biased *against* the Plaintiff. Additionally, it is undisputed that the Plaintiff appeared in person at the disciplinary hearing, was represented by counsel and a technical adviser and had an opportunity to and did make an opening statement, cross-examine testifying witnesses and view the documentary evidence against him, challenge documents offered as exhibits, call witnesses, including himself, to testify under oath and submit documentary evidence. It is also undisputed that Plaintiff was afforded the right to submit proposed findings of fact and conclusions of law at the conclusion of the disciplinary hearing, although Plaintiff opted not to avail himself of this right, and that no witness or evidence proffered by the Plaintiff during the disciplinary hearing was excluded. Accordingly, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's LMRDA claim under 29 U.S.C. § 411(a)(5) that Defendants violated his procedural rights unless Plaintiff has submitted evidence showing the existence of a genuine factual issue or has somehow shown that there was no evidence to support the charges of which Plaintiff was found guilty in the union disciplinary proceedings. In opposition to Defendants' motion for summary judgment directed to this claim, Plaintiff points to the following facts and/or evidence:

1. Defendants short-circuited the normal intra-union disciplinary procedure set out in the AFGE National Constitution, which provides for referral of charges to an impartial "committee of investigation" which reviews all evidence, meets with the accuser and accused and makes a preliminary determination whether there is sufficient basis to believe a punishable offense has occurred warranting a disciplinary trial, after which a new impartial trial panel of members of the local union conducts a trial, with its decision approved by a vote of members of the local union. Instead, Defendant Sturdivant requested that the General Counsel's office send an attorney with a financial background to Local No.

916 to investigate the problems there, which investigator never met with the Plaintiff, and Defendant Sturdivant thereafter issued charges against the Plaintiff. Defendant Sturdivant also appointed a trial committee selected by Bob Ball, against whom Plaintiff had run for office.

2. Plaintiff's first appeal was to AFGE's National Executive Council, over whose meetings Defendant Sturdivant presided. Plaintiff was not allowed to present argument nor evidence in support of his appeal.

3. Plaintiff's final appeal was to the AFGE National Convention which was chaired by Defendant Sturdivant. This appeal was assigned to an Ad Hoc Committee which was appointed by Defendant Sturdivant. Plaintiff attests that there was no debate on the Ad Hoc Committee's report and that, with respect to "points of information," the microphones were controlled so that only certain individuals were allowed to speak. Plaintiff was not allowed to speak and delegates' requests that Plaintiff be allowed on the floor to speak were ruled out of order by Defendant Sturdivant.

4. The evidence presented against Plaintiff did not take into account the fact that Local 916 and AFGE Local 916 Charitable and Educational Foundation ("the Foundation") were two separate organizations with separate boards of directors and separate reporting responsibilities from the directors to the membership. Some of the evidence presented at the disciplinary hearing included checks that had been altered.

In addition to the foregoing facts and/or evidence, Plaintiff has offered and pointed to evidence related to the specific charges against him and offered explanations of evidence of charges submitted by Defendants.

From the foregoing facts and/or evidence, as well as evidence of Plaintiff's voiced oppositions to positions taken by Defendant Sturdivant and political activity, *see* I, *supra*, Plaintiff argues that the disciplinary proceedings against him were biased or, at a minimum, that these facts and circumstances indicate that there was a significant risk of actual bias in the proceedings which itself

rendered the proceedings unfair and that the evidence presented in support of the charges against Plaintiff was "very questionable." Plaintiff's Brief at p. 11. It is apparently Plaintiff's position that some of the evidence presented against him was so questionable that it did not constitute "some" or "any" evidence and that other evidence in support of the charges against him with appropriate explanation did not constitute "any" or "some" evidence to support the charges. Moreover, with respect to the issue of bias or risk of bias, Plaintiff argues that Defendants cannot rely on or should not be heard to argue that Defendant Sturdivant acted within the AFGE Constitution which allows the President to appoint a committee of investigation and/or a trial committee whenever the President determines that conditions in the local union would not permit a fair trial to occur, *see* AFGE Constitution Art. IX, § 5(e), because such committees are to be composed of at least three members whereas Defendant Sturdivant selected one individual to conduct the investigation of Plaintiff. Moreover, Plaintiff argues, at the same time that that individual was supposed to be conducting an "impartial" investigation, she gave a speech at the Local's membership meeting slanted to depict her version of the events leading to the charges brought against the Plaintiff. Secondly, Plaintiff argues that no evidence existed that the conditions of Local 916 would not permit a fair trial to occur.

■ The Court deals first with Plaintiff's argument that Defendants bypassed the usual intra-union disciplinary procedure in which committees of local union members conduct an investigation and trial. As the District of Columbia Circuit recognized in *Wildberger v. American Federation of Government Employees, AFL—CIO*, 86 F.3d 1188, the AFGE national constitution expressly permits the National President to bypass investigation and trial by members of the local union when he "determines that the conditions within a local are such that a fair and impartial investigation and trial of charges against a member cannot be conducted by the local union," AFGE Constitution Art. IX, § 5(e), and the President may do so without any input from the charged party. 86 F.3d at 1194. The

AFGE constitution seemingly leaves that determination to the President's discretion; at most, a reasonable basis for the determination that a fair and impartial investigation cannot be conducted by the local union must exist. *See id.* Moreover, "[p]ursuant to Article IX, Section 5, the President may either appoint a committee of investigation to determine whether probable cause exists for charging the accused or bypass a committee of investigation and appoint a trial committee." *Wildberger v. AFGE,* 86 F.3d at 1194–95.

The "investigation" to which Plaintiff refers was an investigation ordered by Defendant Sturdivant for the purpose of finding out what the problems of Local 916 were, after the newly elected officers of Local 916 requested AFGE National's help in analyzing the status of the local's property and its investigation of irregularities in the local union's financial affairs. Defendant Sturdivant requested that the General Counsel's office send an attorney with a financial background to conduct *that* investigation. Pursuant to the options provided under the AFGE National Constitution, *see supra,* Defendant Sturdivant chose to appoint a trial committee or panel which, it is undisputed, did consist of at least three members, rather than a "committee of investigation," after he preferred charges against the Plaintiff in accordance with Article XVIII, Section 3 of the AFGE Constitution, and after he made a specific finding that the conditions within Local 916 were such that a fair and impartial trial of charges against the Plaintiff could not be conducted by Local 916. *See* Letter dated May 14, 1993 from John N. Sturdivant, National President, AFGE, AFL—CIO, to Mr. Gene H. Marshall, (Exhibit "8" to Defendants' Brief) at pp. 1 & 5. The Court concludes that a reasonable basis existed for this finding by Defendant Sturdivant merely by virtue of the undisputed facts that Plaintiff had served as President of Local 916 from January of 1987 until December of 1992 when he was narrowly defeated in his bid for reelection and that the newly elected officers of Local 916 requested an investigation which led to the preferral of charges against the Plaintiff. It was reasonable to conclude that there was a substantial risk that members of

a trial panel selected from the local and members of the local in general would be biased in favor or against the Plaintiff based upon their perception of his presidency or in accordance with their intra-union political alignment. Plaintiff's suggestions that the proceedings against him were unfair because Ms. Adams–Choate, the investigator, gave a speech to Local 916 before her investigation was concluded and that her speech indicates she was biased are not well-taken and do not raise a genuine issue of material fact because the speech was given on May 6, 1993 and the letter informing Plaintiff of the charges against him was dated May 14, 1993. Moreover, none of the members of the Trial Committee were members of Local 916.

With respect to Plaintiff's other assertions designed to show that Defendant Sturdivant maintained control over the proceedings against Plaintiff, (other than appointment of the trial panel, which will be addressed *infra*), e.g., Defendant Sturdivant presided over meetings of AFGE's National Executive Council, chaired the National Convention and appointed the Ad Hoc Committee, these matters are a function of Defendant's Sturdivant's position as National President of AFGE and the AFGE Constitution and Rules. Moreover, there is no evidence that Defendant Sturdivant influenced the decision of either the National Executive Council ("NEC") or the National Convention. Indeed, it is undisputed that neither Defendant Sturdivant nor Bob Ball, National Vice President (Ninth District), participated in the vote on Plaintiff's appeal to the NEC, which voted thirteen to one to sustain the trial decision against Plaintiff.

The Court's review of the evidence relating to appointment of the Ad Hoc Committee and consideration of or debate concerning their report at the AFGE National Convention reveals that Defendant Sturdivant appointed an Ad Hoc Committee in the ordinary course pursuant to his implied authority under Article IX of the National Constitution, that that committee was appointed to review not only Plaintiff's appeal but five other appeals to the National Convention by members from disciplinary actions and to draft a report with a recommendation on the

disposition of each such appeal for the National Convention and that this was done; that the Ad Hoc Committee reviewed the hearing transcript, exhibits and arguments presented at the trial level in the disciplinary proceedings against Marshall as revealed by the Report of the Ad hoc Committee for Appeals to the National Convention (Exhibit "23" to Defendants' Brief) and by the Transcript (Excerpt) of the 1994 Convention (Exhibit "24" to Defendants' Brief); that the Ad Hoc Committee recommended that Plaintiff be acquitted of two of the charges on which he had been found guilty and a downward adjustment in the amount he would be required to repay the local union as a condition to eligibility for union membership at the end of a thirteen-year period; and that delegates to the National Convention chose to use time allotted for debate on the Committee's report and recommendation for points of information rather than for debate and that prior to the convention's consideration of the Ad Hoc Committee's report and recommendation on Plaintiff's appeal, Defendant Sturdivant encouraged delegates to the National Convention to debate the recommendation even advised the delegates that they could "suspend the rules and extend the time for debate." Transcript (Excerpt) of the 1994 AFGE National Convention (Defendants' Exhibit "24") at p. 755. *See id.* at pp. 763–64 & 766.

With regard to Plaintiff's statement that he was not allowed on the floor of the National Convention to speak when delegates requested same because Defendant Sturdivant ruled such requests out of order, Plaintiff has failed to show by reference to Convention Rules or Robert's Rules of Order that the delegates' requests were not out of order, *see* Appendix "C" to AFGE Constitution and Rules (part of Exhibit "6" to Defendants' Motion), and given Plaintiff's expulsion from membership which remained in effect pending appeal, *see* AFGE Constitution at Article XVIII, § 8, and the lack of any challenge to Defendant Sturdivant's "out of order" ruling, it appears that the "out of order" ruling was in conformity with standard procedure and Convention Rules. Moreover, it is observed that the Plaintiff was offered an opportunity to submit a written statement to be presented to the 1994 National Convention, limited to matters raised in Plaintiff's appeal to the NEC, with supporting facts and argument, *see* Letter dated March 28, 1994 from John N. Sturdivant, AFGE National President, to Gene H. Marshall (Exhibit "20" to Defendants' Brief) at p. 3, and that Plaintiff apparently declined that opportunity. *See* Transcript (Excerpt) of 1994 National Convention. Finally, with respect to Plaintiff's statement that the microphones at the National Convention "were controlled so that only certain individuals were allowed to speak," Affidavit of Gene Marshall (Exhibit "15" to Plaintiff's Brief), Plaintiff does not attest that he has any personal knowledge of this and it would appear that he does not and perhaps could not. He has failed to adduce any competent evidence that this occurred, and both the Transcript (Excerpt) of the National Convention and the Memorandum dated August 5, 1994 concerning the Convention Microphone System (Exhibit "19" to Plaintiff's Brief) *cited by Plaintiff, see* Plaintiff's Brief at p. 8, reveal that all efforts were made to allow all delegates who wished to speak to do so, to recognize them in the proper sequence and to allow those who wished to speak both "for" and "against" a matter to do so at the National Convention in August of 1994.

With regard to Plaintiff's argument that he was denied a "full and fair hearing" because the Trial Committee was purportedly biased because selected by Defendant Sturdivant, the evidence is uncontroverted that Bob Ball, AFGE National Vice–President (Ninth District), recommended the three Trial Committee members and that he contacted those persons and requested that they serve on the Trial Committee, *see* Deposition of Bobby Ball (Exhibit "3" to Plaintiff's Brief) at pp. 26–28; Deposition of Earl V. Stallcup (Exhibit "6" to Plaintiff's Brief at pp. 22, 38, & 39–47); Deposition of Sylvester Overturf (Exhibit "46" to Defendants' Brief) at p. 10; Defendant Sturdivant made the formal appointments by letter. See Appointment Letters (Exhibit "9" to Defendants' Brief). Although evidence of political differences between Plaintiff and Defendant Sturdivant which might suggest partiality or a retributory motive on the part of Defendant

Sturdivant and in turn partiality of a trial panel appointed by him is too remote in time to raise such inferences, any such inferences are vitiated by the fact that Bob Ball rather than Defendant Sturdivant actually selected the Trial Committee. Plaintiff's candidacy for National Vice President (Ninth District) against Mr. Ball in 1990 and 1993 raises the possibility of Bob Ball's partiality or retributory motive in selecting the Trial Committee members, but there is no evidence before the Court of any animosity between Plaintiff and Bob Ball. At best, evidence that the Trial Committee members were selected by someone against whom Plaintiff had run for office and was running for office is a scintilla of evidence of a *risk* that members of the Trial Committee would not be unbiased, a *risk* or *possibility* that the uncontroverted evidence before the Court demonstrates was unrealized or did not in fact exist. Indeed, it is uncontroverted that the Chairman of the Trial Committee, Glen J. Peterson, had been Plaintiff's friend for 30 years. It is also undisputed that Mr. Sylvester Overturf, a Trial Committee member, did not like internal union politics and stayed away from politics, but was aware that Local 916 had a history of elections with ungracious winners and sore losers and of the close election which Plaintiff lost and for that reason (and others) viewed the charges against Plaintiff

with skepticism. It is also uncontroverted that Mr. Earl Stallcup, the third Trial Committee member, had no personal friendship with either Ball or Sturdivant and did not support either of them when they ran for national offices. It is undisputed that both Overturf and Stallcup came close to refusing to serve on the Trial Committee. Finally, it is uncontroverted that the Trial Committee members' decision was not influenced in any way by Ball or Sturdivant or anyone else. It is also undisputed that none of the Trial Committee members had any discussion with Ball or Sturdivant about the substance of the charges against Plaintiff, Plaintiff's case or any matters related thereto with the exception that during Peterson's service on the Committee he had one telephone conversation with Bob Ball, the totality of which was that Ball informed Peterson that Local 916 had a bingo operation.

In summary, when all of the evidence and all reasonable inferences therefrom bearing on the issue are considered in a light most favorable to the Plaintiff, there is at best a scintilla of evidence suggesting the possibility of a risk of bias by the Trial Committee members—insufficient evidence to create a genuine issue of material fact as to the probability of actual bias by the tribunal and Plaintiff's receipt of a full and fair hearing [4]

---

**4.** In *Wildberger v. American Federation of Government Employees, AFL—CIO,* 86 F.3d 1188 (D.C.Cir.1996), a case in which the plaintiff claimed that he had been deprived of a "full and fair hearing" and an impartial tribunal because of the combination of functions assigned to the national union's president under its constitution, the District of Columbia Circuit Court said:

> We see nothing inherently wrong with the union constitution authorizing the President to determine probable cause, prefer the charge, appoint a trial committee, and then make the ultimate decision based on the committee's recommendations.

*Wildberger v. American Federation of Government Employees, AFL—CIO,* 86 F.3d at 1195. However, it concluded in that case that because undisputed evidence showed that the national union's president was repeatedly the focus of the plaintiff's criticism and the plaintiff had one time been the president's political opponent, *see* 86 F.3d at 1194 (the plaintiff had written a letter accusing the president and other AFGE officers of improper activities, seeking to control the local union, harassing local union officers and agents, embezzling money from the local

union and violating various racketeering laws; the plaintiff had written a letter to the president declaring his intent to run against him for national union president one month before the investigation of the plaintiff began; and the president's supporters had opposed the plaintiff's candidacy for counsel president the previous year), the combination of prosecutorial and adjudicatory functions in the national union's president created a "significant danger of bias" and a probability of unfairness "too high to be constitutionally tolerable." 86 F.3d at 1196, *quoting Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

This case is distinguishable from the *Wildberger* case became the facts and circumstances to which Plaintiff points as evidence suggesting partiality on the part of Defendant Sturdivant are of a very different character and are remote in time; the investigation which led to charges against the Plaintiff was initiated at the request of the local's officers and the focus of the investigation was not the Plaintiff's actions at President of Local 916; and the National Vice President, not Defendant Sturdivant, selected the Trial

—and, in any event, the evidence before the Court demonstrates the non-existence of a genuine issue of material fact as to any actual bias by the tribunal.

`Finally, having carefully and credited Plaintiff's arguments and evidence, the Court is unable to say that there was no evidence to support the internal union charges of which Plaintiff was found guilty or that there was not "some evidence" presented to support each of the charges. *See International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL—CIO v. Hardeman,* 401 U.S. at 245–46, 91 S.Ct. at 616–17, 28 L.Ed.2d at 21–22.

### III. *Deceit or Fraud*

 Plaintiff alleges in his Amended Complaint as follows:

> Defendants concealed from the Plaintiff the fact that the United States Department of Labor was without jurisdiction to hear Plaintiff's appeal of his expulsion from the AFGE, thereby causing Plaintiff to initiate an appeal with the Department of Labor and to sustain substantial legal expense defending unnecessary motions and procedures instituted by the Defendants.

> Amended Complaint at ¶ XII.

Defendants seek summary judgment on this "claim" arguing that Plaintiff's "claim" is legally insufficient because Plaintiff has failed to show the existence of a duty and a breach thereof on Defendants' part, it is undisputed Defendants did not suggest that Plaintiff seek recourse from the Department of Labor and, in any event, Plaintiff had his own counsel in the DOL proceedings. Plaintiff in response merely points to Article XVIII, Section 10 of the AFGE Constitution as a basis for inferring that the DOL would have jurisdiction to hear a final appeal and suggests because Defendants were obligated pursuant to Article XVIII, Section 8 of the AFGE Constitution to advise the Plaintiff of "available appeal rights," Defendants had a duty to inform Plaintiff of what his appeal

rights were after his appeal to the National Convention, i.e., that he had *no* appeal rights after his appeal to the National Convention, which Defendants breached by not telling him that he did not have a further appeal to the DOL.

First, the Court concludes that no reasonable person would be misled by Article XVIII, Section 10 of the AFGE Constitution to believe that a disciplined union member had a final appeal of the disciplinary action to the Department of Labor. Article XIII, Section 10 provides as follows:

> All provisions relating to the trial procedures and appeals in local constitutions and bylaws must comply with the Rules and Regulations of the Assistant Secretary of Labor for Labor–Management Standards implementing Public Law 95–454, Standards of Conduct for Labor Organizations. This Article supersedes any provisions in local constitutions and bylaws which do not meet the basic democratic procedures prescribed in this Article.

> AFGE Constitution Art. XIII, § 10 (emphasis added).

By certified letters dated May 17, 1993 and November 30, 1993, Defendants advised Plaintiff of his appeal rights as provided in Section 9 of Article XVIII of the AFGE Constitution, thereby discharging their obligation under Section 8 of Article XVIII of the AFGE Constitution. There is no evidence before the Court from which reasonable jurors could find that Defendants did anything to mislead the Plaintiff. Reasonable jurors could not find that by advising Plaintiff of his right to appeal first to the National Executive Council and then to the National Convention and by not also specifically advising Plaintiff that he had no further appeal rights or no right to appeal to the DOL, even in light of AFGE Constitution Art. XIII, § 10, Defendants "misled" the Plaintiff. Compare with Okla.Stat. tit. 76, § 3(3). The Court concludes as a matter of law that Defendants had no duty to advise

---

Committee, the chairman of which had been a friend of the Plaintiff for thirty years. The facts and circumstances herein reflected in the evidence before the Court simply do not pose the significant risk or danger of bias which existed in

*Wildberger* or a *probability* of unfairness too high to be constitutionally tolerable. Moreover, the Court's review of all of the evidence reveals that there was no actual bias on the part of the Trial Committee members as a matter of law.

or inform Plaintiff that he had no further appeals or that the DOL did not have jurisdiction to hear an appeal concerning the disciplinary action taken against him or a Complaint brought pursuant to Title VII of the Civil Service Reform Act, 5 U.S.C. § 7101 *et. seq, see* Letter dated April 11, 1994 from Gene H. Marshall v. Mr. Dave Seifert, Regional Administrator, U.S. Department of Labor (Exhibit "25" to Defendants' Brief) ("This letter along with previously submitted documents will constitute my official complaint . . . .") and U.S. Department of Labor "Decision and Order Granting Respondent's Motion to Dismiss" in the *Matter of Gene Marshall v. American Federation of Government Employees (AFGE), Local 916,* dated April 29, 1996 (Exhibit "26" to Defendants' Brief). Defendants are entitled to summary judgment on this claim.

## IV. *Libel or Slander*

Plaintiff alleges in his Amended Complaint that Defendants "have injured Plaintiff's reputation by unjustly holding him up to public ridicule, and having accused Plaintiff of the commission of crimes." Amended Complaint at ¶ XIII. To the extent Plaintiff is attempting by these allegations to assert a claim for libel or slander (Plaintiff, even in response to Defendants' motion, never specifies the legal basis for this claim), the Court agrees with Defendants that any libel or slander claim of Plaintiff is barred by the applicable one-year statute of limitations, Okla.Stat. tit. 12, § 95 (Fourth). The statements of which Plaintiff complains are those made by Ms. Sandra Adams–Choate in a speech on May 6, 1993, *see* Plaintiff's Brief at p. 24 & Exhibit "21" to Plaintiff's Brief; those made by Mr. Charles Hobbie, Deputy General Counsel for AFGE National, in his opening statement to the Trial Committee at Plaintiff's investigative Hearing, *see* Plaintiff's Brief at p. 24 and Exhibit "68" to Plaintiff's Brief; those made by Sylvester Overturf in his deposition herein, *see* Plaintiff's Brief at p. 24 and Deposition of Sylvester Overturf (Exhibit "64" to Plaintiff's Brief) at p. 138; and statements made by Kenneth Blaylock, a member of the AFGE and past National President, in his deposition herein, *see* Plaintiff's Brief at pp. 23–24 and Deposi-

tion of Kenneth Blaylock (Exhibits "65" & "67" to Plaintiff's Brief) and that he may have made that if Mr. Marshall had done all the things he was accused of, he would be in jail, *see* Plaintiff's Brief at pp. 23–24 and Exhibit "66" to Plaintiff's Brief. The Adams–Choate and Hobbie statements were made well in excess of two years before this action was brought. The statements of Mr. Hobbie and of witnesses in their depositions, e.g., Mssrs. Overturf and Blaylock, are statements made in a "proceeding authorized by law" and are therefore absolutely privileged. *See* Okla.Stat. tit. 12, § 1443.1(A) (First); *Kirschstein v. Haynes,* 788 P.2d 941 (Okla.1990); *Pacific Employees Insurance Co. v. Adams,* 196 Okla. 597, 168 P.2d 105 (Okla.1946); *Bennett v. McKibben,* 915 P.2d 400, 404 (Okl.App.1996); *Hatcher v. Sumpter,* 825 P.2d 638, 639 (Okl.App.1992), (quasi-judicial and administrative proceedings are proceedings authorized by law and statements made during the course of or by preliminary to and in relation to such proceedings made by an attorney, party or witness are absolutely privileged). With regard to Kenneth Blaylock's statement in his deposition herein that he may have made the statement that if the Plaintiff had done all the things he was accused of he would be in jail, there is no evidence as to when this statement was made and, according to the deponent's own statement, it is speculative whether he ever made the statement. The "statement" itself suggests that it was made prior to Plaintiff's Investigative Hearing. In any event, the alleged statement, if it was made, is clearly a nonactionable judgmental statement which is opinionative and not factual in nature. *See, e.g., Price v. Walters,* 918 P.2d 1370, 1376 (Okla.1996); *Miskovsky v. Oklahoma Publishing Co.,* 654 P.2d 587, 593–94 (Okla.), *cert. denied,* 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). Moreover, with respect to the statements in depositions concerning witnesses' beliefs, there is no evidence before the Court of these witnesses' publication of defamatory statements about the Plaintiff, an essential element of Plaintiff's claim. *See, e.g., Miskovsky v. Tulsa Tribune Co.,* 678 P.2d 242, 246 (Okla.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). Thus, Defendants

are entitled to summary judgment on Plaintiff's "claim" for libel or slander because that claim is barred by the statute of limitations and, to the extent such claim is not barred by the statute of limitations, the alleged statements on which the claim is predicated are privileged and/or Plaintiff has failed to adduce evidence of publication.

### Conclusion

In accordance with the foregoing, Defendants' motion for summary judgment on Plaintiff's Amended Complaint is GRANTED.[5]

---

5. On December 17, 1997, the parties filed a stipulation to dismissal with prejudice of Plaintiff's claims against Defendant John Sturdivant. Accordingly, that Defendant's motion is now moot.