# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2264

_____

| | | |
|---|---|---|
| Julie Rutherford, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Dean Kessel, | * | District Court for the |
| | * | District of North Dakota. |
| Appellee, | * | |
| | * | |
| Robert Rutherford; Elizabeth | * | |
| McGregor, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: December 12, 2008
Filed:  March 30, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Julie Rutherford brought this action to quiet title in three condominium properties she claims to own.  These properties were the subject of a North Dakota state trial court order entered against Rutherford's brother, Robert Rutherford.  Such order held the transfers of ownership between the brother and sister were fraudulent

and therefore null and void. Rutherford appeals the district court's[1] determination that her quiet title action is barred by the doctrine of res judicata. We affirm.

I

On May 27, 2004, Robert Rutherford assaulted Dean Kessel in the latter's home in Bismarck, North Dakota. Robert was charged with burglary and assault, convicted, and sentenced to serve four years. Kessel brought a civil action in state court against Robert for the injuries suffered in the assault. At the outset of the civil action, the state trial court entered an order enjoining Robert from disposing of his assets. Near the same time, Kessel discovered three condominiums recorded as being owned by Robert. On September 21, 2004, Kessel filed and recorded a lis pendens against the properties, giving notice that a personal injury action had been filed against Robert and that title to the properties could be affected by a judgment in such action.

In August 2005, Robert informed his sister, Julie, of the civil action brought against him by Kessel. On October 15, 2005, while Robert was incarcerated, he appointed Julie his attorney-in-fact. In December 2005, acting pursuant to her appointment, Julie executed warranty deeds transferring the three condominium properties to herself. The deeds recorded by Julie show her both as grantor (via her power of attorney) and as grantee. Julie contends, however, her actual ownership of two of the properties dates back to February 2000 and February 2001. At those times, two deeds were recorded showing Robert as the legal title holder, but Julie contends she was the actual owner. She claims Robert did not provide any consideration for the deeds and only held legal title in trust for her benefit. With respect to the third property, Julie contends Robert granted her a security interest in the property in February 2000 to secure obligations owed to her by him. She contends the December

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

2005 transfers pursuant to her power of attorney were to fulfill expressed or implied agreements between herself and her brother regarding her actual ownership of the properties.

The personal injury action proceeded to trial in April 2006. During the course of the trial, Julie sat at defense counsel's table as her brother's representative; he was still incarcerated. Acting pursuant to her power of attorney, she also controlled certain aspects of the litigation, such as paying attorney fees. When documentation was introduced showing Robert owned the three condominium properties, Julie said nothing about her alleged ownership. The jury found in favor of Kessel and awarded damages. On April 27, 2006, the state trial court entered a judgment in Kessel's favor in the amount of $240,415.47, plus interest.

Following the trial, both Kessel and the Rutherfords brought post-judgment motions. Of particular note, on September 28, 2006, Kessel brought an ex parte motion to set aside the December 2005 transfers of the three condominium properties, alleging the transfers were fraudulent. The state trial court granted the motion, holding that the transfers were null and void and title to the properties remained with Robert. On October 2, 2006, Kessel provided Robert with notice of the order. Robert, in turn, forwarded the notice to his sister's attorneys, who received it on October 6, 2006. On that same day, Robert appealed the judgment entered against him in state trial court to the North Dakota Supreme Court, and Julie filed her quiet title action in federal district court. The North Dakota Supreme Court subsequently affirmed the judgment of the state trial court. Kessel v. Rutherford, 734 N.W.2d 342 (N.D. 2007) (unpublished table disposition).

In the quiet title action, Kessel brought a motion for summary judgment. Kessel contended, in part, Julie was improperly attempting to seek relief from the ex parte order of the state trial court and should be barred from doing so because she was in privity with her brother as a result of the power of attorney to act on his behalf. The

-3-

district court initially denied Kessel's motion, concluding Julie's claims of a property interest in the three condominium properties was not identical to the issues decided in the state trial court's ex parte order. In addition, the district court found Julie was not in privity with her brother, but acknowledged it was a "close question."

After conducting discovery, which included taking Julie's deposition during which she admitted sitting silently in court when the issue of Robert's ownership of the three condominiums was discussed, Kessel filed a second motion for summary judgment. He renewed his argument that Julie should be precluded from challenging the state trial court's order voiding the transfers of the properties as fraudulent. The district court revisited Kessel's preclusion arguments, this time finding Julie was in privity with her brother and concluding the quiet title action was barred by the doctrine of res judicata. Rutherford v. Rutherford, 552 F. Supp. 2d 980, 989-90 (D. N.D. 2008). Julie filed a timely appeal to this court.

II

The district court's grant of summary judgment on the issue of res judicata is reviewed de novo. Morse v. Comm'r, 419 F.3d 829, 833 (8th Cir. 2005). For a claim to be precluded under the doctrine of res judicata due to a determination reached in a prior lawsuit, five elements must be satisfied. Those elements are:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must [(5)] have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

<u>Costner v. URS Consultants, Inc.</u>, 153 F.3d 667, 673 (8th Cir. 1998) (internal citations and quotations omitted). Julie contends none of these five elements are present in this case, and thus we examine them seriatim.

### A. Final Judgment on the Merits

This element is satisfied. The state court action resulted in a final judgment on the merits. A jury awarded Kessel $240,415.47 plus interest, and a judgment was entered in his favor in that amount. Rutherford appealed the judgment to the North Dakota Supreme Court, and it was affirmed. <u>See</u> <u>Kessel v. Rutherford</u>, 734 N.W.2d 342 (N.D. 2007).

Robert did not specifically appeal the ex parte order setting aside the transfer of the three condominium properties. Relying upon N.D. Cent. Code § 28-27-02(7), Julie argues the order was not appealable due to its ex parte nature. The statute states in part: "An order made by the district court or judge thereof without notice is not appealable[.]" N.D. Cent. Code § 28-27-02(7). The statute, however, goes on to state:

> [B]ut an order made by the district court after a hearing is had upon notice which vacates or refuses to set aside an order previously made without notice may be appealed to the supreme court when by the provisions of this chapter an appeal might have been taken from such order so made without notice, had the same been made upon notice.

<u>Id.</u>

Thus, after receiving notice of entry of the ex parte order, Robert could have asked the district court to vacate or set aside the ex parte order. If the district court refused to do so, he could have then appealed the second order. <u>See</u> <u>Beck v. Smith</u>, 296 N.W.2d 886, 888 (N.D. 1980) ("Although an ex parte order is not appealable the party against whom it is issued can move the district court to vacate the ex parte order,

and the court's order denying such motion may then be appealable under the terms of Section 27-28-02(7)."); see also Prod. Credit Ass'n of Minot v. Schlak, 383 N.W.2d 826, 828 (N.D. 1986) ("The terms of Section 28-27-02 prohibit the appeal of an ex parte order and require an unsuccessful party to obtain a decision based on traditional adversarial methods, either on a motion to vacate the order or on a motion for reconsideration.").

After receiving notice of the ex parte order, Robert failed to request a hearing on the matter, or to ask the district court to vacate the order. If he had done so, he could have appealed the order. Having failed to request a hearing, and consequently having failed to appeal the order, Robert is bound by the judgment entered in the state court suit with respect to the issue of the fraudulent transfers of the condominiums.

B.     The State Trial Court's Jurisdiction

Julie contends the state trial court lacked jurisdiction, within the context of the tort suit between her brother and Kessel, to decide whether the transfer of the three condominium properties was fraudulent. Relying upon North Dakota statutory law relating to the execution of judgments, she argues a separate "action" is required to determine whether she has title to the three properties. See N.D. Cent. Code § 28-25-14 (governing the procedure on adverse claims and indicating property claims adverse to a judgment debtor are "recoverable only in an *action* against such person [brought] by the receiver") (emphasis added); N.D. Cent. Code § 13-02.1-07(1) (governing the remedies of creditors under the Uniform Fraudulent Transfer Act and referring to "an *action* for relief against a transfer") (emphasis added). She also relies upon a passage from an 1889 decision of the Supreme Court of Dakota (presiding over the Dakota territories before North and South Dakota became states) which discussed the difference between proceedings supplementary to execution of a judgment under the Code of Civil Procedure and a creditor's bill sustainable in a court of chancery. See Feldenheimer v. Tressel, 43 N.W. 94, 96 (Dakota 1889) ("[T]he question of title

cannot be summarily disposed of by the court or judge before whom the proceedings [supplementary to execution] may be pending. Such questions must be adjudicated and determined by an *action* brought for that purpose.") (emphasis added).

The issue in <u>Feldenheimer</u> was whether post-judgment motions to execute on a judgment entirely supplanted the right of a judgment creditor to bring a separate action – similar to a creditor's bill historically allowed in a court of equity – to challenge a fraudulent transfer. In other words, <u>Feldenheimer</u> involved the opposite of what occurred here. Here, Kessel obtained a judgment at law against Robert Rutherford and then brought a post-judgment motion in the *same* action to challenge a fraudulent transfer. In <u>Feldenheimer</u>, the judgment creditor obtained a judgment at law against the defendant and then brought a *separate* action to challenge a fraudulent transfer. The defendant responded by claiming the judgment creditor's only remedy was to do what Kessel did in this case, i.e., bring a post-judgment motion in the suit at law (a proceeding supplementary to execution) to challenge the fraudulent transfer. The Supreme Court of Dakota rejected the argument, holding the judgment creditor could bring a separate action similar to a creditor's bill historically brought in chancery court. The court emphasized the fact, however, that *both* choices for remedies were available to the judgment creditor: "[S]upplemental proceedings . . . in many respects . . . may serve as a substitute for a creditor's bill [but] they are by no means the exclusive remedy to which the creditor may resort. He may still have his creditor's suit." <u>Feldenheimer</u>, 43 N.W. at 96.

North Dakota, like most states, has a unified court system. Claims which were historically viewed as equitable ones, such as a creditor's bill to set aside a fraudulent transfer, are brought in the same court as those claims historically brought in a court of law, such as a personal injury tort claim. Thus, the state trial court clearly had jurisdiction over Kessel's personal injury claim, as well as his fraudulent transfer claim, as both of those causes of action would be filed in the state district courts.

North Dakota law did not prohibit Kessel from adjudicating both of his causes of action against Robert (the tort claim and the fraudulent transfer claim) in the same lawsuit. The North Dakota Rules of Civil Procedure provide "[a] party may also state as many separate claims or defenses as the party has [in a single action], regardless of consistency and whether based on legal or on equitable grounds or on both." N.D. R. Civ. P. 8(e)(2).

A majority of courts allow a tort plaintiff to challenge a tortfeasor's allegedly fraudulent transfer of property in the same action as the tort suit. See Travelers Indem. Co. v. Rubin, 551 A.2d 1220, 1223 (Conn. 1988) ("The plaintiff . . . could incorporate in a single complaint a claim for damages in tort and a petition that a fraudulent conveyance made to defeat her claim be set aside."); Downs v. Powell, 108 S.E.2d 715, 718 (Ga. 1959) (holding a tort plaintiff "may proceed in one action against the tortfeasor and the grantee in such voluntary deed, to obtain (1) a judgment for damages against the tortfeasor for the negligent tortious homicide of her child, and (2) a decree adjudging null and void as to her conveyances of real and personal property executed by the defendant tortfeasor subsequently to the commission of the tort."); Rachal v. Balthazar, 32 So.2d 483, 484 (La. Ct. App. 1947) (involving a case in which a fraudulent conveyance was set aside in favor of a plaintiff in the same lawsuit as the tort action brought by the plaintiff against the tortfeasor/fraudulent conveyor); Exchange Nat'l Bank of Tulsa v. Washington, 30 N.Y.S.2d 43, 45 (N.Y. Sup. Ct. 1941) ("[C]reditors may now assail fraudulent conveyances without first obtaining a judgment, and may assail them in the same suit in which they seek to establish their debt[.]"); McMakin v. Stratton, 1884 WL 7369, at *3 (Ky. Ct. App. 1884) ("It is certain that the appellee . . . had the right to combine with his prayer for [a tort] judgment the further prayer for subjecting the property fraudulently conveyed to the payment of his debt."); see also Right of Tort Claimant, Prior to Judgment, to Attack Conveyance or Transfer as Fraudulent, 73 A.L.R.2d 749 § 4[a] (discussing those cases in which courts allowed an action for damages to be combined with a claim to set aside a fraudulent conveyance).

Thus, we reject Julie's contention the state trial court lacked jurisdiction over Kessel's fraudulent transfer claim simply because Kessel did not bring the cause of action in a separate lawsuit.

C.    Same Parties or Privies

Julie next contends she was not in privity with her brother with respect to the state trial court's order concluding the transfer of the three condominium properties was fraudulent.  We disagree.

> In general, privity exists if a person is so identified in interest with another that he represents the same legal right. . . . [Res judicata applies to] a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties.  Fundamental fairness underlies any determination of privity.

Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 384 (N.D. 1992) (internal citations and quotations omitted).

As the district court recognized, Julie was in privity with her brother Robert with respect to Kessel's tort suit.  Robert granted her a power of attorney to act in his regard.  The transfer of property between Robert and Julie was undertaken by Julie acting in her capacity as Robert's representative.  Julie had the right to participate in the Kessel tort suit pursuant to the power of attorney, and did so.  She acted as Robert's representative by sitting at defense counsel's table during the entire civil trial in state court.  She also paid the attorney fees incurred in defense of the tort suit. Finally, with respect to the issue of "fundamental fairness" underlying a determination

of privity, the district court found it significant that Julie "was present in the courtroom when documentation was presented which showed that Robert Rutherford owned the condominiums referenced as Parcels 1, 2, and 3 [and] [i]f ownership of the condominiums had in fact changed, Julie Rutherford had an obligation to 'set the record straight' rather than allow her brother to testify falsely." Rutherford, 552 F. Supp. 2d at 986.

Citing Bismarck Public School District No. 1. v Hirsch, 136 N.W.2d 449 (N.D. 1965), Julie argues a grantee is no longer in privity with her grantor upon the delivery of a deed. That is not the holding in Hirsch. The principle of law recognized in Hirsch is that "one is not a privy to a judgment where his succession to the rights of property thereby affected occurred *previous* to the institution of the suit." Hirsch, 136 N.W.2d at 452 (emphasis added). The holding in Hirsch is irrelevant to this case. The judgment at issue is the judgment Kessel obtained against Robert in the tort suit. The tort suit was initiated on September 19, 2004. The transfer of property between Julie and Robert did not occur prior to the institution of the tort suit, but *afterwards*, on December 2, 2005. Thus, the district court did not err in determining that Robert and Julie were in privity.

D.     Same Claims or Causes of Action

Julie next contends that her quiet title action does not involve the same claims or causes of action adjudicated in Kessel's tort claim. We disagree. The question of whether Julie's quiet title action is precluded by the state trial court's order "turns on whether its claims arise out of the same nucleus of operative facts as the prior claim." Costner, 153 F.3d at 677 (internal quotations and citations omitted). The issue Julie wants to adjudicate in her quiet title action concerns her alleged ownership in the three condominium properties. That is the same issue adjudicated in the state trial court's order declaring null and void the transfers between Robert to Julie. Both suits would involve the validity of the unilateral conveyance Julie constructed in the midst of the

-10-

personal injury lawsuit between Kessel and her brother. This is precisely the type of collateral attack upon a prior court's decision which the doctrine of res judicata bars.

E.     Notice and Opportunity to be Heard

Finally, Julie contends she did not have an opportunity to be heard in the state trial court with respect to her claim to title to the three condominium properties. The issue, however, is not whether Julie had an opportunity to be heard in the state trial court on this matter, but whether her brother had notice and an opportunity to be heard. The doctrine of res judicata bars both parties and their privies from relitigating an issue already decided by a prior court. Thus, as long as Robert had notice and an opportunity to be heard on the issue of the fraudulent transfer, Julie is also barred from relitigating the issue because Julie was in privity with her brother.

The ex parte nature of Kessel's fraudulent transfer motion is troubling. There does not appear to be any emergency, or other reason, which justified bringing the motion ex parte. Robert was, however, given notice of the entry of the order and had an opportunity to be heard on the issue by moving to vacate the order or bringing a motion for reconsideration. See Schlak, 383 N.W.2d at 828. He did not avail himself of these opportunities, and the state trial court's order became binding against him when the North Dakota Supreme Court affirmed the judgment. Furthermore, Julie had actual notice of the entry of the order. Pursuant to her power of attorney, she also could have brought a motion to vacate the order or a motion for reconsideration in her capacity as her brother's representative. As a consequence, we conclude Robert had notice and an opportunity to be heard on the issue of the fraudulent transfer in the state trial court. Robert is therefore barred from relitigating the issue, and because Julie is in privity with her brother she is also barred from relitigating the issue.

## III

All of the elements of the doctrine of res judicata are satisfied in this case. We therefore affirm the judgment of the district court in all respects.

_____