# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1122

_____

| | | |
|---|---|---|
| Stephen J. Holschen, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| International Union of Painters & | * | Eastern District of Missouri. |
| Allied Trades/Painters District | * | |
| Council #2, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 22, 2009
Filed: March 12, 2010

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Stephen Holschen brought this action against the International Union of Painters & Allied Trades/Painters District Council #2 (the Union) alleging several violations of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401-53, as well as a state law claim for intentional interference with a valid business expectancy. The district court[1] dismissed the state law claim concluding it

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

was preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The district court granted summary judgment on two LMRDA claims, and directed verdicts on the two remaining LMRDA claims following a jury trial. Holschen appeals raising a host of issues. We affirm.

I

The Union operates a non-exclusive hiring hall in the St. Louis area, making job referrals for its members to prospective employers. The collective bargaining agreements (CBAs) the Union enters into with prospective employers do not require the latter to hire union members, and union members are free to seek employment through the Union's job referral system or through their own efforts. Holschen, a painter, was a Union member and became a labor organizer for the Union in 2001.

In the 2003 election for the Union's business manager, Holschen supported Rich Bryan. Bryan lost the election to Kevin Kenny. Kenny promptly removed Holschen from his position as a labor organizer after the election, but Holschen remained a member of the Union. In January 2006, Holschen took a non-union position with the City of St. Louis (the City).

During the time between his removal as a labor organizer until he started his job with the City, Holschen contends Kenny conspired against him with other union members to "blackball" him by not referring his name to prospective employers in retaliation for Holschen's support of Bryan in the 2003 business manager election. For example, Max Robinson, a man whose son employed Holschen during this time period, testified Kenny approached him at a Christmas party and said things would be difficult for his son if he continued to employ Holschen. Holschen lost his job with Robinson's son a month later. Despite the alleged blackballing, Holschen was able to work 1183 hours in 2004 and 1088 hours in 2005, numbers somewhat lower but

generally consistent with the number of hours he worked prior to becoming a labor organizer.[2]

The hostility between Kenny and Holschen continued after Holschen started working for the City. Holschen began efforts to organize the City's water department employees. The Union found out about Holschen's efforts and sent him a letter on February 8, 2006, telling him water department employees fell under the jurisdiction of another union, the Carpenters. The letter told Holschen to stop organizing because such efforts were considered a violation of the Constitution of the International Union of Painters and Allied Trades.

Around this same time, Holschen announced his intention to run against Kenny in the June 2006 election for Union business manager. In addition, Holschen learned the Union had been engaging in efforts to organize the City's lead abatement painters, who at the time did not fall under the jurisdiction of the Carpenters' union. In February 2006, the Union announced it had successfully organized the City's lead abatement painters.

Holschen believed Kenny and the Union were acting inconsistently by directing him to cease activities to organize the City's water department employees, while at the same time engaging in efforts to organize the City's lead abatement painters. Holschen made it known he was going to bring Union disciplinary charges against Kenny for not fulfilling his obligations to organize City workers. When Kenny learned of Holschen's intentions, he told Holschen he would respond by filing charges against Holschen for, among other things, continuing efforts to organize City workers after being told to stop in the February 8 letter and for filing baseless charges against

_____

[2]In the six years prior to becoming a labor organizer, Holschen averaged about 1274 hours per year.

-3-

Kenny. Holschen did, in fact, file charges against Kenny. Kenny responded by filing charges against Holschen.

On March 11, 2006, the Union sent letters to both Holschen and Kenny regarding the respective charges and notifying both a disciplinary hearing would be held on April 13, 2006. Holchen's letter informed him he would be allowed to "confront and properly challenge the testimony of any witnesses who testify against you and you will be allowed to challenge the validity of any evidence offered against you. You will also be allowed to present witnesses and offer evidence on your own behalf." Despite advising Holschen of these rights, the Union's standard operating procedure for disciplinary hearings is to sequester both witnesses *and* parties from the hearing room. If parties specifically request to be present while other witnesses testify for the purpose of hearing the evidence or cross-examining the witnesses, they are allowed to be present. Holschen testified he understood these standard operating procedures.

On the night of the disciplinary hearing, Holschen was asked to wait in a separate room for his turn to testify. He testified he did not know the trial against him had started while he was waiting. A witness was waiting in the same room as Holschen, however, so Holschen became aware his hearing had started when the witness, Michael Catiller, was summoned away from the waiting room to testify. At that point, Holschen did not tell anyone involved in the hearing he wished to be present to hear the testimony or to cross-examine witnesses.

When it was Holschen's turn to present evidence, he was brought into the hearing room. He objected to one of the members of the trial board, Rich Dueckner, on the grounds Dueckner worked directly for Kenny. The trial board sustained Holschen's objection and removed Dueckner from the trial board. Holschen then testified on his own behalf. He also introduced a sworn statement of Rich Bryan. When Holschen was done giving his testimony, the chairman of the trial board, Dave

-4-

Pohl, asked him if he was satisfied with his case and Holschen stated, "sure." Holschen never indicated there was more he wanted to say.

The trial board found Holschen "guilty" without specifying guilt as to any of the particular charges brought against him. The trial board fined him $15,000 and expelled him from the Union, giving him the right to appeal only if he first paid the fine.

Holschen filed an action in federal district court against the Union alleging a Title VII claim. The Union successfully moved to dismiss the Title VII claim. Holschen then filed a new complaint. The first count of the new complaint alleged several violations of the LMRDA. The second count alleged a state law claim for intentional interference with a valid business expectancy.

The district court dismissed the state law claim for interference with a valid business expectancy concluding it was preempted by the LMRA. In the alternative, the district court held the claim was subject to and barred by the six month statute of limitations found in Section 10(b) of the National Labor Relations Act (NLRA), 20 U.S.C. § 160(b). The district court later granted a motion for summary judgment on two of the four claims Holschen brought under the LMRDA. The two claims disposed of by summary judgment were a voting rights claim, and a claim the trial board conducting the disciplinary hearing was biased.

The two remaining LMRDA claims proceeded to a jury trial. The first claim was an alleged violation of Holschen's right to a full and fair hearing under the LMRDA, which fell under two subparts – one for an alleged violation of the right to cross-examine witnesses, and the second for an alleged violation of the right to present evidence. As to these claims, the district court ruled prior to trial that Holschen's remedy (should he prevail at trial) would be limited to a new disciplinary hearing rather than monetary damages. The second claim was an alleged violation of

Holschen's free speech rights under the LMRDA, i.e, Holschen alleged the Union blackballed him for supporting Bryan in the 2003 business manager election.

After hearing Holschen's evidence, the district court granted the Union's motion for a directed verdict on both of the remaining LMRDA claims. With respect to the full-and-fair-hearing claims, the district court determined the Union's disciplinary hearing comported with the requirements of due process. With respect to the free-speech claim, the district court determined the evidence did not show the Union – as opposed to Kenny individually – had taken any formal disciplinary action against Holschen in retaliation for his support of Bryan in the 2003 election. In addition, the district court determined Holschen failed to produce sufficient evidence connecting any of the Union's alleged retaliatory conduct to an injury (i.e., a loss of work).

Holschen filed a timely appeal raising a host of issues. First, Holschen argues the district court erred in dismissing his Missouri state law claim for interference with a valid business expectancy on the grounds it was preempted by the LMRA. Second, he contends the district court erred in granting summary judgment on his trial board bias claim. Third, he claims the district court erred in directing a verdict on his full and fair hearing claims regarding cross-examination and presentation of evidence; if we agree, he further contends the district court erred in limiting his remedy to a new disciplinary hearing rather than allowing him to recover monetary damages in lieu of a new hearing. Fourth, he claims the district court erred in directing a verdict on his free speech claim. Finally, he raises two evidentiary issues with respect to certain statements the district court excluded during trial.

II

We begin by addressing the district court's dismissal of the state law claim for interference with a valid business expectancy on the grounds the claim was preempted by the LMRA. We review de novo a district court's determination a claim is

-6-

preempted by § 301 of the LMRA. Bogan v. Gen. Motors Corp., 500 F.3d 828, 832 (8th Cir. 2007).

A state law claim is preempted by § 301 if its resolution "depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). In this case, the CBAs entered into between the Union and prospective employers reflected the Union's status as a non-exclusive hiring hall. Pursuant to the CBAs, the Union's rights/obligations as to prospective employers were limited to "assist[ing] . . . the Employer in recruiting needed employees." Correspondingly, prospective employers were not obliged to hire union workers, but merely to "include the Union among other persons, firms, or corporations to be notified [of job openings] and . . . afford the Union an opportunity to recommend job applicants." Consistent with these provisions, the CBAs specifically recognized prospective employers were "free to accept or reject any job applicant referred from any source," and union members were likewise "free to select the Employer for whom they desire to work."

Thus, the CBAs addressed the scope of the rights and duties between the Union and its members, reflecting the Union's mere obligation to act as a job referral source for union members. The CBAs also addressed the scope of the relationship between union members and prospective employers, indicating prospective employers were free to disregard applicants recommended by the Union and hire non-union applicants. In other words, a union member's status *vis a vis* a prospective employer was merely that of a job applicant.

Holschen's state law claim for interference with a valid business expectancy required him to prove (1) the existence of a contract or valid business expectancy, (2) the Union's knowledge of the contract or relationship, (3) a breach induced or caused by the Union's intentional interference, (4) the absence of justification, and (5) damages. See Tamko Roofing Prods., Inc. v. Smith Eng'g Co., 450 F.3d 822, 829 (8th

Cir. 2006) (applying Missouri law). Furthermore, while a business expectancy need not be based on an already existing contract, it must be based on more than a "mere hope" of a business relationship. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. 2006) (quoting Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 863 (Mo. Ct. App. 2000)). The expectancy cannot be contrary to the terms of the contract on which the expectancy depends. Id. at 251. To succeed on his state law claim, then, Holschen would have to prove the Union knew of a valid business expectancy between Holschen and prospective employers, breached a duty owed to Holschen by intentionally interfering with that expectancy without justification, and caused damages.

There is preemption under § 301 "if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement." Williams v. George P. Reintjes Co., Inc., 361 F.3d 1073, 1074-75 (8th Cir. 2004) (quoting United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990)). If the CBAs gave Holschen something more than a mere hope of a business relationship with prospective employers, the Union's duty to refrain from interfering with his valid business expectancy would arise from the CBAs. Conversely, if the CBAs did not give rise to a valid business expectancy between Holschen and prospective employers, the Union would have no corresponding duty to refrain from interfering with such an expectancy. Either way, the resolution of Holschen's state law claim would depend upon the meaning of the CBAs, because the CBAs would have to be examined to determine both (1) the extent of the Union's duties to its members and (2) the scope of a union member's contractual or business relationship with prospective employers. Consequently, the district court correctly concluded Holschen's state law claim was preempted under § 301.[3]

---

[3]Because we conclude Holschen's state law claim was preempted under § 301, we do not address the district court's alternative holding the claim was subject to and barred by the NLRA's six-month statute of limitations.

Holschen next contends the district court erred in granting summary judgment on his trial board bias claim. We review the district court's grant of summary judgment de novo. Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009).

Holschen's trial board bias claim was brought for an alleged violation of Section 101(a)(5) of the LMRDA, which provides in relevant part "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization . . . unless such member has been . . . afforded a full and fair hearing." 29 U.S.C. § 411(a)(5)(c). The LMRDA's right to a "full and fair hearing" encompasses the right to have an unbiased trial board. E.g., Falcone v. Dantinne, 420 F.2d 1157, 1161 (3d Cir. 1969).

The district court granted summary judgment on this claim after concluding Holschen failed to present any direct evidence a trial board member was actually biased against him. Citing Wildberger v. American Federation of Government Employees, 86 F.3d 1188 (D.C. Cir. 1996), Holschen argues he does not need actual evidence of trial board bias; he contends a mere inference of bias is sufficient to survive summary judgment.

In Wildberger, the appellate court concluded the district court "unduly restricted its inquiry by requiring Wildberger to show actual bias" and held there are some "circumstances themselves, by presenting a significant danger of bias [that] create[] the inherent impropriety." 86 F.3d at 1196 (quoting Tincher v. Piasecki, 520 F.2d 851, 855 (7th Cir. 1975)). The "circumstances" in both Wildberger and Tincher, as well as the other cases cited in Wildberger in which a plaintiff was not required to show actual bias, involved situations where an adversary participated as a decision-maker in the disciplinary proceedings. See id. at 1196 (involving an opponent of the Union president where the president participated in the disciplinary proceedings); Tincher, 520 F.2d at 855 ("[I]t is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member

in the accused's disciplinary hearing."); <u>Kuebler v. Cleveland Lithographers and Photoengravers Union Local 24-P</u>, 473 F.2d 359, 364 (6th Cir. 1972) (concluding the union member was denied a full and fair hearing where the trial board was "made up of the same parties who investigated the charges against him").

Holschen's accuser, Kenny, was not a member of the trial board that found Holschen guilty and expelled him. In addition, when Holschen objected to one member of the trial board based on a close relationship between the trial board member and Kenny, the trial board sustained Holschen's objection and removed the allegedly biased person from the board. Thus, this is not a situation where the "circumstances themselves" presented a significant danger of bias such that Holschen was excused from presenting at least some evidence of actual bias involving one or more trial board members in order to survive summary judgment.

Citing <u>International Brotherhood of Boilermakers v. Hardeman</u>, 401 U.S. 233 (1971), Holschen also contends the trial board's bias can be inferred from the fact there was *no* evidence to support the charges against him, and under <u>Hardeman</u> there is a denial of due process unless "some evidence" supports the charges. <u>Id.</u> at 246. As the Union correctly notes, however, Holschen improperly focuses on just *one* of the charges the Union brought against him – the claim he was attempting to organize city laborers after he received the February 8, 2006 letter from the Union directing him to cease his efforts to unionize certain city workers. Holschen ignores the fact that other charges were brought against him, including the claim he filed baseless charges against Kenny. Holschen has not denied there is *some* evidence to support some of the charges brought against him. We therefore conclude the district court did not err in granting summary judgment on Holschen's claim of trial board bias.

Holschen's remaining appellate issues involve the two LMRDA claims that were tried. Holschen challenges the exclusion of certain evidence at trial, as well as the district court's grant of directed verdict motions on both claims. Because the

evidentiary issues may impact the resolution of the directed verdicts, we address those first. We review a district court's evidentiary rulings for a clear abuse of discretion. Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 648 (8th Cir. 2009).

At trial, Holschen sought to introduce testimony from David Doerr, a business agent for the Union, to prove his free-speech/retaliation claim. According to Holschen's offer of proof, Doerr was present when Matt Ferguson, a union member, confronted two union officers about being blackballed by Kenny. Doerr would have testified he heard another Union business agent tell Ferguson "Kevin [Kenny] didn't blackball you. The only one he ever f*****d with was Holschen." Trial Transcript at 162. The district court excluded the statement on the grounds it was hearsay and also because Holschen could not show whether the business agent who made the statement was speaking on behalf of the Union when he made the statement, or simply voicing his own opinion.

For the reasons given by the distict court, it was not an abuse of discretion to exclude Doerr's testimony. In addition, at most the alleged statement would have been relevant to whether Kenny himself retaliated against Holschen, not whether the Union itself formally disciplined Holschen for exercising free speech rights. As we explain below, evidence of ad hoc retaliation by an individual union member does not state a cause of action for a free speech violation under the LMRDA. Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 91 (1989).

Holschen also sought to introduce the testimony of Joe Barrett, a union member, regarding a statement Kenny made during a cocktail party. Kenny was discussing an administrative proceeding Holschen had brought against the Union, which at the time was pending before the National Labor Relations Board (NLRB). Referring to that separate proceeding, Barrett heard Kenny say "all the guys will just lie for [me]." Id. at 156. Holschen sought to introduce the statement to suggest witnesses were lying for Kenny in the federal district court trial. The district court

excluded the statement on relevance grounds, noting the NLRB matter was a "whole different proceeding" and the court did not know "what they would lie about [so] I'm just not sure it's probative of anything here." Id. at 164-65.

The district court did not abuse its discretion in excluding this testimony. Holschen failed to identify what "guys" Kenny claimed would lie in the NLRB proceeding, and whether the "guys" were witnesses in the federal trial. Holschen also failed to identify what subjects Kenny claimed the "guys" in the NLRB proceeding would lie about, and whether the same subjects were issues in the federal trial. Holschen also failed to identify a particular witness or witnesses he believed lacked credibility in the federal trial, or identify a particular topic about which he claimed a witness was lying. Given these circumstances, the district court correctly concluded Barrett's testimony was not probative.

Holschen next challenges the district court's grant of a directed verdict on his full-and-fair-hearing claims for alleged violations of his right to cross-examine witnesses and right to present evidence during the Union's disciplinary hearing. We review the grant of a motion for a directed verdict de novo, applying the same standard employed by the district court. Warren v. State Farm Fire & Cas. Co., 531 F.3d 693, 698 (8th Cir. 2008). A motion for a directed verdict "should be granted only when the evidence produced by the party opposing the motion, when given the benefit of all reasonable inferences, would not suffice as the basis for a rational conclusion in that party's favor." Id. (internal citations and quotations omitted).

Like Holschen's claim of trial board bias, his full-and-fair-hearing claims were brought for an alleged violation of Section 101(a)(5) of the LMRDA. The LMRDA's right to a "full and fair hearing" includes the right to cross examine witnesses and the

right to present evidence.[4]  E.g., Ritz v. O'Donnell, 566 F.2d 731, 735 (D.C. Cir. 1977).

The district court directed a verdict on both full-and-fair-hearing claims because the evidence showed the following: (1) the Union, in advance of the hearing, notified Holschen in writing of his rights to be present and to cross-examine witnesses; (2) Holschen testified he was aware of those rights; (3) Holschen testified he was aware of the Union's standard operating procedure which required him to ask to be present while other witnesses testified for the purpose of hearing the evidence or cross-examining the witnesses; (4) Holschen became aware his hearing had started, at a minimum, when witness Michael Catiller was summoned away from the waiting room to testify and Holschen still did not ask at that point to be present to hear the testimony or to cross-examine witnesses; (5) Holschen was given the opportunity to present all the evidence he intended to offer; (6) at the close of Holschen's evidence, the trial board chairman asked him if he was satisfied with his case and he stated "sure;" and

---

[4]Fundamental due process also gives a party the right to be *present* during proceedings brought against him or her, subject to limited exceptions.  See Lane v. Tennessee, 315 F.3d 680, 682 (6th Cir. 2003) ("Parties in civil litigation have [a] due process right to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests."); see also Helminski v. Ayerst Labs., 766 F.2d 208, 216-17 (6th Cir. 1985) ("Consistent with due process, a plaintiff who can comprehend the proceedings and aid counsel may not be excluded from any portion of the proceedings absent disruptive behavior or a knowing and voluntary waiver."); Cary by and through Cary v. Oneok, Inc., 940 P.2d 201, 204 (Okla. 1997) ("The ideals behind due process and a fair trial permit a party to be present in the courtroom absent extreme conditions.").

Because Holschen alleges only that his rights to cross examination and presentation of evidence were violated, we express no opinion on whether the Union's standard operating procedure of sequestering both witnesses *and* parties from a disciplinary hearing – without first establishing some compelling reason for excluding a party – comports with the due process requirements of the LMRDA.

-13-

(7) Holschen acknowledged the reason he was satisfied with the evidence he had presented during the hearing was because he felt he would prevail.

These facts support the conclusion that Holschen's right to present evidence was never violated. The facts also show Holschen waived any objection he may have had to the alleged violation of his right to cross-examination. See Ritz, 566 F.2d at 735 (holding a knowing failure to exercise rights offered by the union in connection with a disciplinary hearing constitutes a waiver of those rights); cf. Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

Holschen contends his case is like Milne v. International Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 156 F. Supp. 2d 172 (D. Conn. 2001), where a district court found a union member did not knowingly waive his right to cross-examine witnesses against him at a disciplinary hearing. Id. at 180. We disagree. Milne involved a union member tried in absentia after he refused to answer some preliminary questions put to him by the trial board and was asked to leave the hearing room. Id. at 175-76. The union member claimed he was never told the trial would proceed without him, and when the union president came out of the hearing room and told him he might as well go home if he had nothing to say, he responded "you can't be trying me if that's the case and I'm sitting out here." Id. at 176. In contrast, Holschen had been advised of his rights in advance, was aware of the Union's standard operating procedures, at some point knew his hearing had started and still never requested the right to cross-examine witnesses even though there was testimony he would have been allowed to conduct cross-examination if he had asserted his right

-14-

to do so, and then participated in his hearing.  We agree with the district court these facts establish Holschen knowingly waived his right to cross-examination.[5]

Finally, Holschen argues the district court erred in granting the motion for a directed verdict on his free-speech/retaliation claim.  Holschen alleged a violation of Section 101(a)(2) of the LMRDA, which provides in relevant part "[e]very member of any labor organization shall have the right . . . to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization[.]"  29 U.S.C. § 411(a)(2).  Holschen's claim did not, however, involve the question whether the Union prevented him from expressing his views, but instead whether it *retaliated* against him for expressing his views by not referring him for jobs through the Union's non-exclusive hiring hall.  While Section 101 of the LMRDA sets forth the substantive free speech rights Holschen enjoyed, Section 609 in turn prohibited the Union from retaliating against him, that is, "fin[ing], suspend[ing], expel[ling], or otherwise disciplin[ing] [him] for exercising any right to which he [was] entitled under the provisions of this chapter." 29 U.S.C. § 529.

Even assuming the facts in the light most favorable to Holschen, the most the evidence showed is that Kenny, as an individual union officer, retaliated against Holschen for supporting Bryan in the 2003 election.  There was no evidence the Union itself formally disciplined Holschen in retaliation for his exercise of free speech rights.  In <u>Breininger</u>, the Supreme Court held "ad hoc" retaliation by individual union officers in a non-exclusive hiring hall does not give rise to a cause of action under the LMRDA for an alleged "free speech" retaliation claim.  <u>See</u> <u>Breininger</u>, 493 U.S. at 91 (interpreting the phrase "otherwise discipline" as found in Section 609 and concluding "Congress did not intend to include all acts that deterred the exercise of

---

[5]Because we conclude the district court properly granted a directed verdict on Holschen's full-and-fair-hearing claims, Holschen's contention the district court erred by limiting his remedy to a new disciplinary hearing is moot.

rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules."); see also Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1297 (3d Cir. 1991) (concluding the plaintiff's LMRDA free speech claim failed "because the union members failed to allege acts by the union acting in its official capacity and instead raised only ad hoc retaliations by the individual union official."). Thus, for there to be actionable retaliation under Section 609, a union member must show the retaliation was "the result of an established union disciplinary process." Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am., 152 F.3d 178, 185 (2d Cir. 1998).  Such evidence is lacking here.

Although the facts in this case are indistinguishable from those involved in Breininger, Holschen argues Breininger does not foreclose his retaliation claim because he says his claim is not brought under Section 609.  He purports to bring a retaliation claim arising directly under Section 101, invoking the remedies available under Section 102 of the LMRDA, 29 U.S.C. § 412,[6] rather than the remedies available under Section 609.

As an initial matter, we disagree with Holschen's view of how Sections 101, 102, and 609 interact with each other.  Sections 102 and 609 do not provide alternative remedies for violations of Section 101. Rather, Sections 101 and 609 both create substantive rights which inure to the benefit of union members (Section 101 – the so-called "Bill of Rights of Members of Labor Organizations" – grants union members a number of rights, and Section 609 adds the right not to be subject to retaliatory discipline for exercising any LMRDA rights), while Section 102 contains the remedy provisions for alleged violations of both of the other sections.  See 29

---

[6]Section 102 of the LMRDA provides in relevant part "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief . . . as may be appropriate."  29 U.S.C. § 412.

-16-

U.S.C. § 529 ("The provisions of section 412 of this title [Section 102] shall be applicable in the enforcement of this section [609].").

Notwithstanding our disagreement with Holschen's view of how the three statutory sections interact, Holschen does raise a valid point: do the free speech provisions of Section 101, in conjunction with the use of the word "infringed" in the remedy provision of Section 102, give rise to a free-standing retaliation claim, or must an LMRDA free-speech retaliation claim always be brought pursuant to Section 609 and thus subject to the limits and contours contained therein?

While some courts appear to have recognized a retaliation claim arising directly under Section 101 and then brought pursuant to Section 102, distinct from a retaliatory *discipline* claim arising under Section 609 brought pursuant to Section 102, e.g., Maddalone, 152 F.3d at 183 (addressing a Section 101 retaliation claim independently of a Section 609 retaliatory discipline claim and stating "Section 101(a)(2) protects union members from direct interference with union membership rights in *retaliation* for their expression of opinions concerning union activities.") (emphasis added), the Supreme Court has only intimated such a claim may exist, and twice declined to address whether it actually does. See Breininger, 493 U.S. at 94 n.18; see also Finnegan v. Leu, 456 U.S. 431, 439 & n.10 (1982).

Our circuit has not addressed whether such a claim exists, and we decline to recognize such a claim for the first time in this case. First, we have our doubts about whether a free-standing Section 101 retaliation claim exists. In situations where, as here, Congress has specifically adopted a statutory provision creating a right to be free from retaliation for the exercise of substantive rights guaranteed elsewhere in the same statutory scheme, see, e.g., 29 U.S.C. § 158(a)(1) (setting forth the retaliation provisions of the National Labor Relations Act (NLRA)); 29 U.S.C. § 623 (setting forth the retaliation provisions of the Age Discrimination in Employment Act (ADEA); 29 U.S.C. § 1140 (setting forth the anti-retaliation provision under the

-17-

Employee Retirement Income Security Act (ERISA)); 42 U.S.C. § 2000e-3 (setting forth Title VII's retaliation provision); 42 U.S.C. § 12203 (setting forth the retaliation provision under the Americans with Disabilities Act (ADA)), we are unaware of a dual analytic framework for addressing not only retaliation claims limited by the scope of and tethered to the retaliation provision, but also free-standing retaliation claims which arise from the statute(s) creating the substantive rights.[7]

Second, while Holschen raised this issue on appeal by arguing his case was distinguishable from Breininger, his contention there are two alternate types of LMRDA retaliation claims was "unaccompanied by some effort at developed argumentation." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). There is a difference between a party distinguishing a case on the grounds he is pursuing a different remedy than the one pursued therein, and persuading a court such a remedy exists. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Id. Holschen's pleadings did not specify the distinction he now makes between general retaliation claims arising under Section 101 and 102, and retaliatory *discipline* claims arising under Section 609, and he concedes his reliance upon the former rather than the latter did not develop until trial. As a result, this issue was not fully aired in the district court. If we are to recognize this type of claim for the first time, we would prefer to do it in a case where the claim was specifically

---

[7]Our doubt is not without its own doubt, however, because there is a similarity between the words "infringement" and "retaliation" such that Section 102's use of the word "infringed" could be interpreted broadly enough to create a retaliation claim itself. Cf. 29 U.S.C. § 2615(a)(1) (using the word "interfere" when describing an employer's denial of substantive rights guaranteed under the Family Medical Leave Act (FMLA)); Scobey v. Nucor Steel-Arkansas, 580 F.3d 781, 790 n. 9 (8th Cir. 2008) (discussing the obvious similarity between "interference" and "retaliation" and expressing doubt about whether our circuit has identified the correct statutory provision which gives rise to a retaliation claim under the FMLA); Phillips v. Mathews, 547 F.3d 905, 913-14 (8th Cir. 2008) (Colloton, J., concurring) (same).

-18-

pleaded in the district court, fully aired below, and thoroughly briefed on appeal. This is not such a case.

### III

For the reasons stated above, we affirm the district court in all respects.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the court's judgment and agree with most of its opinion, but I decline to join the *dicta* in footnote 4 concerning the Union's hearing procedures and the *dicta* in the discussion of Stephen Holschen's "free-speech/retaliation" claim. *Ante*, at 15-18. Assuming for the sake of analysis that Holschen may proceed with a retaliation claim under Sections 101 and 102 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 411, 412, I would affirm the dismissal of this claim based on the district court's conclusion that Holschen presented insufficient evidence that actions of the Union's business manager caused the injury that Holschen allegedly suffered. T. Tr. II, at 362-63.

_____